1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10
11

12  MICHEL K. GARDNER, ALVIN      )   CASE NO. CV 13-07348 MMM (FFMx)
    BROWN,                        )
13                               )   ORDER GRANTING IN PART AND
         Plaintiffs,             )   DENYING IN PART DEFENDANTS'
14                               )   MOTION TO DISMISS; DENYING
         vs.                     )   DEFENDANTS' MOTION TO STRIKE AS
15                               )   MOOT; GRANTING FIRST AMERICAN'S
    BANK OF AMERICA, NA; WELLS    )   MOTION TO JOIN DEFENDANTS'
16  FARGO BANK, NA; WELLS FARGO   )   MOTION TO DISMISS
    HOME MORTGAGE; FIRST          )
17  AMERICAN TRUSTEE SERVICING    )
    SOLUTIONS, LLC; NO RED TAPE   )
18  MORTGAGE; FIRST HORIZON HOME  )
    LOAN CORPORATION; DOES 1-10,  )
19                               )
         Defendants.             )
20

21        Pro se plaintiffs Michel K. Gardner and Alvin Brown filed this action on October 3, 2013

22  against defendants Bank of America, NA ("BofA"), Wells Fargo Bank, NA (sued individually and

23  also erroneously as "Wells Fargo Home Mortgage") ("Wells Fargo"), No Red Tape Mortgage

24  ("No Red Tape"), First American Trustee Servicing Solutions, LLC ("First American"), First

25  Horizon Home Loan Corporation ("First Horizon"), and various fictitious defendants.[1]   The

26  complaint pleads claims for violation of the Fair Debt Collection Practices Act (the "FDCPA"),

27  _____

28        [1]Complaint, Docket No. 1 (Oct. 3, 2013).  Unless otherwise noted, all references to docket
    numbers refer to the docket in this case.

15 U.S.C. § 1692 et seq., and for wrongful foreclosure and breach of contract.[2]  Plaintiffs seek

actual, statutory, and punitive damages, but do not seek to set aside the sale of their home

foreclosure.  Plaintiffs have since dismissed No Red Tape under Rule 41(a).[3]

On October 30, 2013, BofA and Wells Fargo filed a motion to dismiss the complaint[4] and

---

[2]*Id*.  The complaint also contains various apparent references to causes of action under the California Rosenthal Act, California Civil Code § 1788 et seq., California Business and Professions Code § 17200 ("UCL"), and the Truth in Lending Act ("TILA"); the complaint's caption plainly makes reference to a cause of action for breach of the implied covenant of good faith and fair dealing.  Construing the pleading liberally, the court concludes that plaintiffs may have intended to assert these additional causes of action as well.  See *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ("Because Hebbe is an inmate who proceeded *pro se*, his complaint 'must be held to less stringent standards than formal pleadings drafted by lawyers,' as the Supreme Court has reaffirmed since *Twombly*. . . .  While the standard is higher, our 'obligation' remains, 'where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt,'" citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc) ("Although Bretz' appeal was drafted in terms of § 1983 only, we have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt")).

[3]Notice of Dismissal by Brown; Notice of Dismissal by Gardner.

[4]Motion to Dismiss ("Motion"), Docket No. 14 (Oct. 30, 2013).  In the motion, defendants state "Local Rule 7-3 does not require a conference prior to filing this motion as this case is exempt pursuant to Local Rule 16-12(c)." (*Id*. at 1.)  Local Rule 7.3 states that "[i]n all cases not listed as exempt in L.R. 16-12 . . . counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution.  The conference shall take place at least seven (7) days prior to the filing of the motion." CA CD L.R. 7-3.  Unless they state otherwise, the local rules and any reference to "attorney" or "counsel" in them "appl[y] to parties pro se." CA CD L.R. 1-3.  Thus, unless one of the exceptions set forth in Local Rule 16-12 applies, all parties must meet and confer with opposing parties who are pro se prior to filing a motion.  Rule 16-12 provides an exemption for cases in which "the plaintiff is appearing pro se, is in custody, and is not an attorney." CA CD L.R. 16-12.  "Local Rule 16-12 [therefore] exempts conferences only where pro se litigants are in custody."  *Williams-Ilunga v. Gonzalez*, No. CV 12–08592 DDP (AJWx), 2013 WL 571795, *4 (C.D. Cal. Feb. 13, 2013).  Because plaintiffs are not in custody, defendants were required to meet and confer with them prior to filing the motion to dismiss.  Defendants did not do so.  For that reason, the court could, in its discretion, refuse to consider the motion.  See, e.g., *Singer v. Live Nation Worldwide, Inc.*, No. SACV 11–0427 DOC (MLGx), 2012 WL 123146, *2 (C.D. Cal. Jan. 13, 2012) (denying a motion for summary

a motion to strike plaintiffs' prayer for attorneys' fees and punitive damages.[5]  First American

joined the motion to dismiss.[6]  Plaintiffs have not opposed the motions.

# I.  FACTUAL BACKGROUND

### A.    Facts Alleged in the Complaint

Plaintiffs allege that in or about November 2004, Gardner purchased real property located

at 15128 Valley Vista Boulevard, Sherman Oaks, California, 91403.[7]  In connection with the

---

judgment because defendant failed to comply with Local Rule 7-3).  Cf. *Professional Programs Group v. Department of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994) ("Local rules have the 'force of law' and are binding upon the parties and upon the court").  Plaintiffs have not opposed the motion, although they have, since the motion was filed, dismissed No Red Tape Mortgage on November 13, 2013 (Notice of Dismissal by Brown, Docket No. 20 (Nov. 13, 2013); Notice of Dismissal by Gardner, Docket No. 21 (Nov. 13, 2013), and participated in the drafting of a Rule 26(f) report, filed December 6, 2013 (Joint Rule 26(f) Report, Docket No. 22 (Dec. 6, 2013). From this activity, it is clear that plaintiffs are aware of what has been happening in their case, including the fact that these motions are pending.  Defendants, moreover, filed the motion on October 30, 2013, and set it for hearing on February 3, 2014.  Plaintiffs had until January 13, 2014, or more than two months, to file opposition to the motion.  Because it appears plaintiffs had sufficient notice of the motions and sufficient opportunity to respond to them, the court does not believe they have suffered any real prejudice as a result of defendants' failure to comply with the rule.  Moreover, given plaintiffs' litigious history with defendants, it is unlikely that a Local Rule 7-3 meet and confer would have avoided the need for the motion because it is unlikely plaintiffs would have agreed to a stay of the case.  For these reasons, the court elects to consider the motion on the merits.  See *Brodie v. Board of Trustees of California State University*, No. CV 12-07690 DDP (AGRx), 2013 WL 4536242, *1 (C.D. Cal. Aug. 27, 2013) (considering the merits of a motion despite counsel's failure to comply with Local Rule 7-3); *Williams-Ilunga*, 2013 WL 571795, *4 (same); *Reed v. Sandstone Properties, L.P.*, No. CV 12–05021 MMM (VBKx), 2013 WL 1344912, *5-*6 (C.D. Cal. Apr. 2, 2013) (same); *Thomas v. U.S. Foods, Inc.*, No. 8:12–cv–1221–JST (JEMx), 2012 WL 5634847, *1 n. 1 (C.D. Cal. Nov. 14, 2012) (same); *Wilson-Condon v. Allstate Indemnity Co.*, No. CV 11–05538 GAF (PJWx), 2011 WL 3439272, *1 (C.D. Cal. Aug. 4, 2011) (same).  Defense counsel are cautioned, however, that the court expects compliance with the local rules in any future filings, and will strike any future pleadings that fail to comply with Local Rule 7-3.

[5]Motion to Strike ("MTS"), Docket No. 13 (Oct. 30, 2013).

[6]Motion for Joinder, Docket No. 19 (Nov. 7, 2013).  First American's motion is granted. This order uses the term "defendants" to refer to BofA, Wells Fargo, and First American.

[7]Complaint at 5.

purchase, Gardner took out two loans.  The primary loan was for $622,000; the deed of trust reflects that the lender was No Red Tape.[8]  Fidelity National Loan Portfolio Solutions was the original trustee.[9]  The secondary loan was for $155,000, and was financed by First Horizon.[10]  Plaintiffs allege that in November 2004, Gardner deeded 50% of the property to Brown, although the two did not record the grant deed until September 16, 2010.[11]  The same day they recorded the grant deed, they recorded a second grant deed in which Brown granted 50% of his remaining interest in the property to Gardner, with the result that she owned 75% of the property, and granted the other 50% of his interest to a woman named Valerie Warren.[12]  These documents, of which the court takes judicial notice *infra*, reflect that Gardner signed the grant deed to Brown on December 27, 2004; Brown signed a grant deed gifting the property to Gardner and Warren on July 24, 2008.[13]

In March 2006, Gardner obtained a mortgage refinance loan in the principal sum of $960,000 from Wells Fargo.[14]  Fidelity National Title Insurance Company was the trustee ("Fidelity National") on the deed of trust securing this loan.[15]  The deed of trust conveyed the property to Fidelity National "in trust, with power of sale."[16]  At some point thereafter, plaintiffs began sending loan modification requests to their lender, and were told on inquiry that the bank

---

[8]Request for Judicial Notice ("RJN"), Docket No. 15 (Oct. 30, 2013), Exh. 1 (No Red Tape Deed of Trust).  The court takes judicial notice of this and other documents submitted with defendants' request for judicial notice, *infra*.

[9]*Id.*

[10]*Id.*; RJN, Exh. 2 (First Horizon Deed of Trust).

[11]*Id.* at 5-6.

[12]RJN, Exh. 10 (Brown's Grant Deed).

[13]See RJN, Exhs. 9 (Gardner's Grant Deed) and 10 (Brown's Grant Deed).

[14]RJN, Exh. 3 (Wells Fargo Deed of Trust).

[15]*Id.* at 3.

[16]RJN, Exh. 3 (Wells Fargo Deed of Trust).

was considering their requests.[17]  Plaintiffs allege that bank representatives repeatedly told them that in order to qualify for a loan modification more quickly, they needed to default on their present loan.[18]  In April 2008, a bank representative purportedly advised Gardner that if she filed for bankruptcy, she would be able to forestall foreclosure proceedings.[19]  The following month, Gardner filed a voluntary bankruptcy petition.[20]  Thereafter, she filed a motion for valuation and avoidance of lien against Wells Fargo, which the bankruptcy court denied in January 2009.[21]

On June 12, 2009, First American, acting as agent and attorney-in-fact for Wells Fargo under the loan, issued a notice of default and election to sell.[22]  On July 15, 2009, First American was substituted as trustee.[23]  On July 23, 2009, Wells Fargo transferred the beneficial interest in the loan to BofA.[24]  On September 17, 2009, First American issued a notice of trustee's sale.[25]

In approximately January 2011, plaintiffs received a package from the Wells Fargo loan modification department, which stated that Wells Fargo could not locate plaintiffs' file and asked that they send an updated modification package; the letter informed plaintiffs that all information would need to be resubmitted.[26]  Plaintiffs subsequently called the loan processor, who told them

---

[17]*Id.* at 6.

[18]*Id.*

[19]*Id.*

[20]*Id.*

[21]*Id.* at 6-7.

[22]RJN, Exh. 6 (Notice of Default and Election to Sell).

[23]RJN, Exh. 5 (Substitution of Trustee).

[24]RJN, Exh. 4 (Assignment of Deed of Trust).

[25]RJN, Exh. 7 (Notice of Trustee's Sale).

[26]*Id.* at 7.

that he had the documents and would call them if he needed more information.[27]  On February 7, 2011, First American filed a second notice of trustee's sale for a sale on March 2, 2011.[28] Plaintiffs did not hear from Wells Fargo concerning their loan modification application until March 2011, when a representative called them and told them the bank was working on approval of their modification application.[29]  On March 2, 2011, however, plaintiffs' property was sold at a trustee's sale to BofA.[30]

Plaintiffs allege that the foreclosure was unlawful because, after the origination and funding of their loan, it was sold to investors as a mortgage-backed security without written notification to them; as a result, they assert, none of the defendants owned the home loan or promissory note, or were lawfully appointed trustees in possession of the original note, at the time of foreclosure.[31] Consequently, they maintain, none of the defendants had the right to declare a default, cause notices of default to be issued or recorded, or foreclose on the property.[32]  Plaintiffs also contend that defendants did not contact them prior to foreclosure to assess their financial situation and explore options that would allow them to avoid foreclosure.[33]  Finally, plaintiffs allege that the promissory note and deed of trust required defendants to apply payments made by plaintiffs "properly to the note," but that from May 2009 to March 2010, defendants breached the note and deed of trust by failing to do so, leading to the eventual foreclosure of the property.[34]

---

[27]*Id.*

[28]RJN, Exh. 8 (Second Notice of Trustee's Sale).

[29]*Id.*

[30]*Id.*; RJN, Exh. 12 (Trustee's Deed Upon Sale).

[31]*Id.* at 10-11.

[32]*Id.*

[33]*Id.* at 11.

[34]*Id.* at 13.

**B.      Defendants' Request for Judicial Notice**

Defendants request that the court take judicial notice of eighteen documents that relate to plaintiffs' claims.[35]  All of the documents have either been filed by the Los Angeles County Recorder's Office or are filings and/or are orders in bankruptcy and state court cases involving plaintiffs and the property.[36]  Plaintiffs, having failed to oppose the motion to dismiss,[37] do not oppose the request for judicial notice.  In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).  A court must normally convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if it "considers evidence outside the pleadings. . . .  A court may, however, consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).  See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (a court may consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Branch v. Tunnell* 14 F.3d 449, 453 (9th Cir. 1994) (noting that a court may consider a document whose contents are alleged in a complaint, so long as no party disputes its authenticity), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

---

[35]RJN.

[36]See *id*. at 2-5.

[37]Plaintiffs' failure to oppose the motion is discussed, *infra*.

1    Thus, in ruling on a motion to dismiss, the court can consider material that is subject to

2    judicial notice under Rule 201 of the Federal Rules of Evidence.  FED.R.EVID. 201.  Under Rule

3    201, the court can judicially notice "[o]fficial acts of the legislative, executive, and judicial

4    departments of the United States," and "[f]acts and propositions that are not reasonably subject

5    to dispute and are capable of immediate and accurate determination by resort to sources of

6    reasonably indisputable accuracy."  Courts have held that "[j]udicial notice is appropriate for

7    records and 'reports of administrative bodies.'"  *United States v. 14.02 Acres of Land More or*

8    *Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008) (quoting *Interstate Natural Gas Co.*

9    *v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954)).

10    Defendants ask that the court take notice of twelve documents recorded by the Los Angeles

11    County Clerk and Recorder: (1) the deed of trust associated with plaintiffs' primary loan, dated

12    December 10, 2004; (2) the deed of trust related to plaintiffs' secondary loan, dated December

13    10, 2004; (3) the deed of trust associated with plaintiffs' mortgage refinance loan, dated March

14    28, 2006; (4) an assignment of deed of trust dated July 23, 2009; (5) a notice of default and

15    election to sell under deed of trust dated June 12, 2009; (6) a substitution of trustee dated July 15,

16    2009; (7) a notice of trustee's sale dated September 17, 2009; (8) a notice of trustee's sale dated

17    February 7, 2011; (9) a grant deed dated December 24, 2004; (10) a grant deed dated July 24,

18    2008; (11) an order granting a motion for relief from the automatic stay under 11 U.S.C. § 362

19    filed December 2, 2010 in the United States Bankruptcy Court; and (12) a trustee's deed upon sale

20    dated March 2, 2011.[38]  The documents defendants seek to have the court consider are each time

21    and date stamped, and have a record number.  Other courts have taken judicial notice of such

22    documents as public filings.  See *Velazquez v. GMAC Mortgage Corp.*, 605 F.Supp.2d 1049,

23    1057-58 (C.D. Cal. 2008) (taking judicial notice of documents recorded by the Los Angeles

24    County Recorder's Office, including deeds of trust); see also *Krug v. Wells Fargo Bank, N.A.*,

25    No. 11–CV–5190 YGR, 2012 WL 1980860, *2 (N.D. Cal. June 1, 2012) (public records are

26    judicially noticeable under Rule 201); *Grant v. Aurora Loan Services, Inc.*, 736 F.Supp.2d 1257,

27    _____

28    [38]*Id.* at 2-4.

8

1   1264 (C.D. Cal. 2010) (noting that a "[party] provided a reference number for the document,

2   showing that it was in fact recorded; this demonstrates that it is a public record"); *Fimbres v.*

3   *Chapel Mortgage Corp.*, No. 09-CV-0886-IEG (POR), 2009 WL 4163332, *3 (S.D. Cal. Nov.

4   20, 2009) (taking judicial notice of a deed of trust, notice of default, notice of trustee's sale,

5   assignment of deed of trust, and substitution of trustee as each was a public record); *Angulo v.*

6   *Countrywide Home Loans, Inc.*, No. 1:09-CV-877-AWI-SMS, 2009 WL 3427179, *3 n. 3 (E.D.

7   Cal. Oct. 26, 2009) ("The Deed of Trust and Notice of Default are matters of public record.  As

8   such, this court may consider these foreclosure documents"); *Distor v. U.S. Bank NA*, No. C

9   09-02086 SI, 2009 WL 3429700, *2 (N.D. Cal. Oct. 22, 2009) (finding that a deed of trust,

10  notice of default and election to sell under deed of trust, and notice of trustee's sale were matters

11  of public record and thus proper subjects of judicial notice).   The court therefore grants

12  defendants' request for judicial notice as to the documents that have been recorded by the County

13  Recorder and will consider the documents it has proffered in deciding the motion to dismiss.

14        As noted, defendants also ask that the court judicially notice six documents, which are

15  either filings or orders from other court cases related to this action: (1) Brown's summary of

16  bankruptcy schedules filed May 22, 2012 in the United State Bankruptcy Court for the Central

17  District of California; (2) an unlawful detainer complaint filed in Los Angeles Superior Court by

18  BofA against Brown and another woman living at the property on October 14, 2011; (3) a default

19  judgment entered by the Los Angeles Superior Court on October 4, 2012 against those defendants;

20  (4) a judgment in the unlawful detainer case filed October 9, 2012 in Los Angeles Superior Court;

21  (5) a complaint filed by plaintiffs against certain of the defendants in this case on February 1, 2013

22  in Los Angeles Superior Court, captioned *Gardner, et al. v. Bank of America, N.A., et al.*

23  (*Gardner I*); and (6) an order on defendants' demurrer and motion to expunge in *Gardner I* filed

24  October 7, 2013.[39]  These documents, too, are the proper subjects of judicial notice because they

25  are capable of accurate and ready determinations by resort to sources whose accuracy cannot

26  reasonably be questioned.  See *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746

27  
28        [39]*Id.* at 4-5.

9

n. 6 (9th Cir. 2006) ("To determine what issues were actually litigated in the *Wal-Mart* courts, we take judicial notice of Plaintiffs' briefs in those courts and the transcript of the *Wal-Mart* fairness hearing"); *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005) (taking judicial notice of the City of San Jose's answer filed in a state court case); *Meredith v. Oregon*, 321 F.3d 807, 817 n. 10 (9th Cir. 2003), amended, 326 F.3d 1030 (9th Cir. 2003) (taking judicial notice of plaintiff's filing in state court); *Smith v. Duncan*, 297 F.3d 809, 815 (9th Cir. 2002) (taking judicial notice of state court documents); *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) ("We take judicial notice of the California Court of Appeal opinion and the briefs filed in that proceeding and in the trial court"). Accordingly, the court takes judicial notice of these documents as well.

The judicially noticed court documents reveal that Warren, the woman to whom Brown granted 50% of his interest in the property, filed a Chapter 13 bankruptcy petition on September 16, 2010, the same day Brown transferred an interest in the property to her.[40] On December 2, 2010, the bankruptcy court granted BofA's motion for relief from the automatic stay imposed by 11 U.S.C. § 362.[41] The bankruptcy court found that "[t]he filing of the [bankruptcy] petition was part of a scheme to delay, hinder and defraud creditors that involved [ ] transfer of all or part ownership of, or other interest in, the Property without the consent of the secured creditor or court approval."[42] At her request, Warren's bankruptcy was dismissed on April 19, 2011.[43]

The documents also reveal that on October 14, 2011, nine months after purchasing the property, BofA filed an unlawful detainer action against Brown and a woman named Leslie

---

[40]RJN, Exh. 11 (Order Granting Motion for Relief from Automatic Stay Under 11 U.S.C. §362); see also Voluntary Bankruptcy Petition of Valerie Elise Warren, Case No. BK 10-21664, Docket No. 1 (Sept. 16, 2010).

[41]*Id.*

[42]*Id.* at 5.

[43]Order and Notice of Dismissal, Case No. BK 10-21664, Docket No. 40 (Apr. 19, 2011).

Magellen, who had been living at the property.[44]  While the unlawful detainer action was pending, Brown filed a bankruptcy petition.[45]  He did not list his claims against defendants in this action on his bankruptcy schedules,[46] although he listed as an asset his "100% ownership" of the property.[47]  On October 4, 2012, the state court entered default judgment against Brown and Magellen.[48]  On November 16, 2012, the bankruptcy court issued an order discharging Brown under 11 U.S.C. § 727.[49]

Several months later, on February 1, 2013, plaintiffs filed *Gardner I* in Los Angeles Superior Court against BofA, Wells Fargo, and First American.  Their complaint asserted claims for (1) a void trustee's deed upon sale, (2) quiet title, (3) declaratory relief, (4) fraud and deceit, (5) breach of contract, (6) negligence, and (7) injunctive relief.[50]  Plaintiffs also filed and recorded a lis pendens against the property.[51]  Defendants demurred to the complaint; the court sustained the demurrer, granted plaintiffs fifteen days' leave to amend, and expunged the lis pendens on October 7, 2013.[52]  Defendants represent that this case is still pending.[53]

---

[44]RJN, Exh. 14 (Unlawful Detainer Complaint).

[45]RJN, Exh. 13 (Summary of Schedules); see also Voluntary Bankruptcy Petition of Alvin Brown, Case No. BK 12-14463, Docket No. 1 (May 14, 2012).

[46]*Id.*

[47]Summary of Schedules ("Schedules"), Case No. BK 10-21664, Docket No. 8 (May 22, 2012), at 7.

[48]RJN, Exhs. 15 (Default Judgment Against Brown and Magellan), 16 (Judgment Against Brown and Magellan).

[49]Discharge of Debtor, Case No. BK 10-21664, Docket No. 28 (Nov. 16, 2012).

[50]RJN Exh. 17 (*Gardner I* Complaint).

[51]*Id.*

[52]RJN, Exh. 18 (Order Granting Demurrer and Expunging Lis Pendens).

[53]Motion at 5.

## II.  DISCUSSION

### A.     Plaintiffs' Failure to File Opposition

Local Rule 7-12 provides that "[t]he failure to file any required paper, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion." CA CD L.R. 7-12.  Because the motion to dismiss and motion to strike were set for hearing on February 3, 2014, the deadline for filing opposition was January 13, 2014.  Plaintiffs did not oppose the pending motions by that date, nor have they filed untimely oppositions or any request for an extension of time to do so since then.  Accordingly, the court could, under Rule 7-12, grant the motions on this basis alone.  See *Cortez v. Hubbard*, No. CV 07-4556-GHK (MAN), 2008 WL 2156733, *1 (C.D. Cal. May 18, 2008) ("Petitioner has not filed an [o]pposition to the [m]otion and has not requested any further extension of time to do so.  Pursuant to Local Rule 7-12, her failure to do so could be deemed to be consent to a grant of the [m]otion"); *Mack-University LLC v. Halstead*, No. SA CV 07-393 DOC (ANx), 2007 WL 4458823, *4 n. 4 (C.D. Cal. Sept. 25, 2007) (holding, where a party "failed to oppose or in any way respond" to a motion, that "[p]ursuant to local Rule 7-12, the [c]ourt could grant [p]laintiffs' [m]otion on this ground alone"); *Ferrin v. Bias*, No. ED CV 02-535 RT (SGLx), 2003 WL 25588274, *1 n. 1 (C.D. Cal. Jan. 2, 2003) ("Under Local Rule 7-12, failure to file an opposition may be deemed consent to the granting of the motion").  Nonetheless, in the interest of deciding the case on the merits, the court elects to consider the substance of the motions.

### B.     Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

12

1    The court need not, however, accept as true unreasonable inferences or conclusory legal

2    allegations cast in the form of factual allegations.  See *Bell Atlantic Corp. v. Twombly*, 540 U.S.

3    544, 553–56 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

4    need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

5    'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

6    the elements of a cause of action will not do").  Thus, a plaintiff's complaint must "contain

7    sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'

8    . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court

9    to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

10   *v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Twombly*, 550 U.S. at 545 ("Factual allegations must

11   be enough to raise a right to relief above the speculative level, on the assumption that all the

12   allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United*

13   *States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion

14   to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must

15   be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

16   **C.    Whether Plaintiffs Have Standing to Bring This Case**

17   Defendants first seek to have plaintiffs' complaint dismissed on the threshold grounds that

18   plaintiffs lack standing to sue, that they are estopped from litigating the validity of the foreclosure

19   sale by the doctrine of collateral estoppel, and that the entire case should be stayed pending

20   resolution of *Gardner I* under the *Colorado River* doctrine.  Because the court must determine

21   whether the action presents a justiciable case or controversy before it can consider whether to

22   abstain under *Colorado River* or whether plaintiffs are estopped to bring any of their claims, it

23   first examines standing.

24   Defendants contend both plaintiffs lack standing for two reasons: (1) because plaintiffs do

25   not have a private right of action under *Gomes v. Countrywide Home Loans Inc.*, 192 Cal.App.4th

26   1149, 1154 (2011), which held that the statutes governing the non-judicial foreclosure process do

27   not provide a right to challenge certain aspects of foreclosure proceedings; and (2) because

28

13

1   plaintiffs have failed to allege tender or the ability to tender.[54]   Defendants also contend that

2   Brown lacks standing because his claims are owned by his bankruptcy estate.   In considering

3   whether Brown has standing, the court, *sua sponte*, considers additionally whether he has Article

4   III standing, since documents of which the court has taken judicial notice show that he was not the

5   borrower on any of the underlying loans and deeded any interest he had in the property to Gardner

6   and Warren in 2008.

7                                   **1.     Whether Plaintiffs Lack Standing Under *Gomes***

8           As noted, defendants first contend that plaintiffs' claims are not cognizable because the

9   statutory scheme governing California's non-judicial foreclosure process provides a comprehensive

10  framework for the regulation of non-judicial foreclosure sales executed pursuant to a power of sale

11  contained in a deed of trust.[55]   They assert that this framework covers every aspect of a non-

12  judicial foreclosure sale, such that there is no private right of action permitting plaintiffs to

13  challenge foreclosure proceedings on the ground that defendants lacked authority to foreclose.[56]

14  Defendants cite *Gomes* and *Nool v. HomeQ Servicing*, 653 F.Supp.2d 1047 (E.D. Cal. 2009), as

15  support for this argument.

16          In *Gomes*, the court held that a plaintiff does not have standing to "bring a lawsuit to

17  determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder"

18  because it "would fundamentally undermine the nonjudicial nature of the process and introduce

19  the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures."   192

20  Cal.App.4th at 1155.   There, Gomes had filed suit alleging that the corporation that foreclosed

21  on his property "did not have authority to initiate the foreclosure because the current owner of the

22

23          [54]Because, as discussed *infra*, the court does not reach the merits of the state law claims

24  and because tender is not required to assert an FDCPA claim or a TILA claim not seeking

25  rescission, the court need not consider whether plaintiffs' failure to tender or allege ability to
    tender means they lack standing.   Nor need it determine whether collateral estoppel bars plaintiffs

26  from pursuing a wrongful foreclosure claim.

27          [55]Motion at 6-7.

28          [56]*Id.*

Note did not authorize [it] to proceed with the foreclosure." *Id.* at 1152.  The court noted that Gomes "ha[d] not asserted *any* factual basis [suggesting] that [the corporation] lack[ed] authority to proceed with the foreclosure," in contrast to other cases in which "the plaintiff's complaint identified a *specific factual basis* for alleging that the foreclosure was not initiated by the correct party." *Id.* at 1156 (emphasis original).  The court concluded that Gomes "simply [sought] the right to bring a lawsuit to find out *whether* [the corporation] ha[d] [ ] authority [to foreclose]," and stated that "[n]o case law or statute authorizes such a speculative suit." *Id.* (emphasis in original).

The court in *Nool* considered a different question.  The Nools argued that "none of [the] Defendants ha[d] legal authority to enforce or collect on the Loan, as LENDER is not the note holder of said debt and can therefore not authorize TRUSTEE or any one else to enforce or collect thereon." 653 F.Supp.2d at 1053.  The court construed this as an argument that the foreclosure was invalid because the lender did not have possession of the original promissory note. *Id.*  It thus dismissed the Nools' FDCPA claim because California's non-judicial foreclosure statutes were "exhaustive," and did not include a requirement that the party initiating foreclosure be in possession of the original note. *Id.*[57]

---

[57]Indeed, California law is clear that possession of the original note is not necessary to render a foreclosure valid; like *Nool*, other district courts in this circuit have consistently rejected arguments to the contrary. See, e.g., *Geren v. Deutsche Bank National*, CV F 11-0938 LJO GSA, 2011 WL 3568913, *8 (E.D. Cal. Aug. 12, 2011) ("[T]he absence of an original promissory note in a nonjudicial foreclosure does not render a foreclosure invalid"); *Kolbe v. JP Morgan Chase Ban N.A.*, C 11-01532 SI, 2011 WL 4965065, *3 (N.D. Cal. Oct. 13, 2011) ("[C]ourts have uniformly found that 'physical possession of the original promissory note is not a prerequisite to initiating foreclosure proceedings'"); *Pantoja v. Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177, 1186 (N.D. Cal. 2009) ("Under California law, there is no requirement for the production of an original promissory note prior to initiation of a nonjudicial foreclosure); *Maguca v. Aurora Loan Services*, CV No. 09-1086 JVS (ANx), 2009 WL 3467750, *3 (C.D. Cal. Oct. 28, 2009) ("Under California Civil Code section 2924, 'no party needs to physically possess the promissory note.' Rather, '[t]he foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee.' . . .  A 'person authorized to record the notice of default or the notice of sale' includes 'an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee'" (internal citations omitted)); *Sicairos v. NDEX West, LLC*, CV No. 08-2014 LAB (BLM), 2009 WL 385855, *3 (S.D. Cal. Feb. 13, 2009) ("Under Civil Code

1    In contrast to the plaintiffs in *Gomes* and *Nool*, plaintiffs who allege that the transfer of an
2    interest in a note is invalid, such that the entity instituting foreclosure proceedings lacks the legal
3    right to do so, have generally been held to have standing to sue.  In such cases, courts have held
4    that *Gomes* is inapposite.  As one court characterized it: "Defendants' reliance on *Gomes* is
5    misguided [ ] because here the issue is whether the wrong entity . . . initiated foreclosure whereas
6    in *Gomes* it was whether the company selling the property in the nonjudicial foreclosure sale was
7    authorized to do so by the owner of the promissory note. . . .  This case is a challenge to the
8    principal's authority to foreclose rather than to whether an agent had the authorization of its
9    principal to initiate foreclosure." *Wise v. Wells Fargo Bank, N.A.*, 850 F.Supp.2d 1047, 1051
10   (C.D. Cal. 2012).  See also *Mena v. JP Morgan Chase Bank, N.A.*,No. 12–1257 PSG, 2012 WL
11   3987475, *3 (N.D. Cal. Sept. 7, 2012) (distinguishing *Gomes* and stating that "[t]he court agrees
12   with the premise . . . that judicial action may be used to challenge a nonjudicial foreclosure
13   process where the specific facts alleged in the complaint, taken as true at the pleading stage,
14   demonstrate a failure to effect a valid transfer of beneficial interest in a manner that renders void
15   the initiation of nonjudicial foreclosure"); *Naranjo v. SBMC Mortg.*, No. 11–cv–2229–L(WVG),
16   2012 WL 3030370, *3 (S.D. Cal. July 24, 2012) (distinguishing *Gomes* because "Plaintiff alleges
17   that the transfer of rights to the WAMU Trust is improper, thus Defendants consequently lack the
18   legal right to either collect on the debt or enforce the underlying security interest").

19          Thus, whether plaintiffs lack standing to assert the claims they plead in this action depends
20   on whether they contend, on the one hand, that the foreclosure was invalid because defendants
21   were not in possession of the original note or because the entity that initiated the foreclosure was

22   _____

23   section 2924, no party needs to physically possess the promissory note.  See Cal. Civ. Code §
      2924(a)(1).  Rather, '[t]he foreclosure process is commenced by the recording of a notice of
24   default and election to sell by the trustee,'" citing *Moeller v. Lien*, 25 Cal.App.4th 822, 830
      (1994)); *Putkkuri v. Recontrust Co.*, CV No. 08-1919 WQH (AJB), 2009 WL 32567, *2 (S.D.
25   Cal. Jan. 5, 2009) ("Pursuant to section 2924(a)(1) of the Claifornia Civil Code, the trustee of a
      Deed of Trust has the right to initiate the foreclosure process.  Cal. Civ. Code § 2924(a).
26   Production of the original note is not required to proceed with a non-judicial foreclosure"); *Neal*
      *v. Juarez*, Civil No. 06cv0055 J(JMA), 2007 WL 2140640, *8 (S.D. Cal. July 23, 2007) ("Under
27   Civil Code section 2924, no party needs to physically possess the promissory note").

28

an agent not authorized by the owner of the note to initiate foreclosure or, on the other hand, that defendants were principals that lacked authority to foreclose because they did not have a beneficial interest in plaintiffs' loan. While the former claims would be barred by *Gomes* and *Nool*, the latter would not.

Here, plaintiffs make arguments that fall into both categories. They allege that the sale at foreclosure of their property was unlawful because "none of the Foreclosing Defendants . . . had the original note."[58] Plaintiffs lack standing under California's nonjudicial foreclosure statutes to assert such a claim; to the extent they contend that the foreclosure was wrongful or that defendants violated the FDCPA for this reason, therefore, that aspect of their claim is dismissed with prejudice. Plaintiffs also allege, however, that none of the defendants owned the loan or were lawfully appointed trustees of the loan because the loan was sold to investors as a mortgage-backed security without giving them written notification.[59] While such a claim may not ultimately succeed on the merits, and while the complaint may not sufficiently allege such a claim, plaintiffs do not lack standing to bring the claim, as they assert that defendants are principals that lack authority to foreclose because they do not have a valid interest in plaintiffs' loan. Such a claim is not barred by *Gomes*.

### 2.   Whether Brown Must Be Dismissed for Lack of Standing

#### a.   Whether Brown Has Article III Standing

As noted, the court believes it is necessary to consider independently whether Brown has standing to assert the claims he makes in this action. The court has an obligation to ensure that it has jurisdiction to hear actions pending before it. See, e.g., *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines,'" citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)); *Bova v. City of Medford*, 564 F.3d 1093, 1095 (9th Cir. 2009) ("Although the parties did not raise the issue of subject matter

---

[58]Complaint at 10-11.

[59]*Id.*

17

1   jurisdiction, 'we have an independent obligation to inquire into our own jurisdiction,'" quoting

2   *Perez-Martin v. Ashcroft*, 394 F.3d 752, 756 (9th Cir. 2005)); see also *Snell v. Cleveland, Inc.*,

3   316 F.3d 822, 826 (9th Cir. 2002) ("Federal Rule of Civil Procedure 12(h)(3) provides that a

4   court may raise the question of subject matter jurisdiction, sua sponte, at any time during the

5   pendency of the action").

6         A party invoking federal jurisdiction has the burden of demonstrating that it has standing

7   to sue.  See *FW/PBS*, 493 U.S. at 231 ("[I]t is the burden of the 'party who seeks the exercise of

8   jurisdiction in his favor' 'clearly to allege facts demonstrating that he is a proper party to invoke

9   judicial resolution of the dispute'" (internal citations omitted)); *Warth v. Seldin*, 422 U.S. 490,

10   508 (1975) ("[A] plaintiff who seeks to challenge exclusionary zoning practices must allege

11   specific, concrete facts demonstrating that the challenged practices harm him, and that he

12   personally would benefit in a tangible way from the court's intervention").

13         The elements of standing are "an indispensable part of the plaintiff's case." *Lujan v.*

14   *Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Thus, "each element must be supported in the

15   same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the

16   manner and degree of evidence required at the successive stages of the litigation." *Id.*; see also

17   *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883-85 (1990) (assessing plaintiff's standing

18   under Rule 56 standards, as the dispute regarding standing arose in the context of a motion for

19   summary judgment); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 114-15 & n. 31

20   (1979).  At the pleadings stage, general factual allegations of injury resulting from defendant's

21   conduct may suffice, for on a motion to dismiss courts "presum[e] that general allegations

22   embrace those specific facts that are necessary to support the claim." See *Defenders of Wildlife*,

23   504 U.S. at 561 (quoting *National Wildlife Federation*, 497 U.S., at 889).

24         "The requisite elements of Article III standing are well established: 'A Plaintiff must allege

25   personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be

26   redressed by the requested relief.'" *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S.

27   587, 598 (2007) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  The "injury in fact" prong

28   of Article III standing requires that a plaintiff have suffered "an invasion of a legally protected

interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical." *Defenders of Wildlife*, 504 U.S. at 560 (internal citations omitted).

Plaintiffs allegedly purchased the property at issue in 2004 and financed it with loans from No Red Tape and First Horizon.[60]  Plaintiffs also inconsistently allege that around this time Gardner deeded to Brown 50% of her interest in the property.[61]  The complaint alleges that together the plaintiffs submitted loan modification requests, that Wells Fargo told them it was reviewing their request for a modification but had lost their papers and needed them to re-apply and send all information again, and that defendants then foreclosed on plaintiffs a few days later.[62]

The documents of which the court has taken judicial notice show that Gardner originally purchased the property and took out the subject loans in her name only.  They also show that Gardner deeded 50% of the property to Brown on December 27, 2004.[63]  The grant deed was not recorded until September 16, 2010, however.  By then, Gardner had refinanced her loan with Wells Fargo, and a new deed of trust had been recorded on April 4, 2006.  Gardner covenanted in that deed that she "wa[s] lawfully seised of the estate . . . conveyed and ha[d] the right to grant and convey the Property."  She also covenanted "that the Property [was] unencumbered, except for encumbrances of record."  She warranted and agreed to "defend generally the title to the Property against all claims and demands, subject to any encumbrances of record."[64]  Moreover,

---

[60]Complaint at 5.

[61]*Id*. at 6.

[62]*Id*. at 6-7.

[63]Under the terms of the No Red Tape deed of trust, the grant deed transfer by Gardner to Brown appears to have been inadequate to transfer half of Gardner's obligations under the deed of trust to Brown.  The deed of trust provided that "any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, *and is approved by Lender*, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument *unless Lender agrees to such release in writing*."  (RJN, Exh. 1 at 15 (No Red Tape Deed of Trust, ¶ 13) (emphasis added).)

[64]RJN, Exh. 3 at 45 (Wells Fargo Deed of Trust at 4).

under California Civil Code § 1214, "[e]very conveyance of real property or an estate for years therein, other than [an exception not applicable here], is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action." CAL. CIV. CODE § 1214. Under § 1214, therefore, because the deed of trust securing Wells Fargo's loan was recorded first, Gardner's transfer to Brown was void as to Wells Fargo.

For these reasons, the court doubts that Brown perfected an interest in the property that would give him standing to sue defendants for any action they took against the property or any conduct in which they engaged to collect payment under the terms of the loans. As Brown likely did not have any obligation to repay the loans, he could not have suffered any legally cognizable injury when defendants subsequently attempted to collect on the loan and ultimately foreclosed on the property.[65] See, e.g., *In re Papazov*, BAP No. CC–12–1584–KiClD, 2013 WL 2367802, *7 (9th Cir. BAP May 30, 2013) (holding that individual did not have standing to reopen a third party's bankruptcy proceedings to contest ownership of a property because she "ha[d] not established that she, personally, ha[d] an ownership interest in the [ ] Property . . . [and] an injury in fact [was] lacking"); *Mehta v. Wells Fargo Bank, N.A.*, 737 F.Supp.2d 1185, 1194-95 (S.D. Cal. 2010) (holding, in an action challenging the validity of a foreclosure sale, that plaintiff did

---

[65]Although the Supreme Court has recognized a doctrine of third-party standing, to demonstrate this type of standing successfully, a litigant must show that (1) he or she has a "close" relationship with the person who possesses the right, and (2) there is a "hindrance" to the possessor's ability to protect his or her own interests. See *Kowalski v. Tesmer*, 543 U.S. 125, 129-130 (2004) ("[W]e have limited th[e third-party standing] exception by requiring that a party seeking third-party standing make two additional showings. First, we have asked whether the party asserting the right has a 'close' relationship with the person who possesses the right. Second, we have considered whether there is a 'hindrance' to the possessor's ability to protect his own interests"); *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (noting that a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"). The complaint contains no allegations regarding Brown's relationship with Gardner, and there is no indication that Gardner is hindered in her ability to protect her interests as she is a co-plaintiff in the case. Accordingly, Brown has not shown that he has standing to bring suit on behalf of Gardner.

20

not have standing to assert that the foreclosure sale was void because his ex-wife received no notice of it because "he ha[d] not established that he actually suffered an injury in fact as a result of the alleged failure to provide her with notice," "[the] claimed failure of notice did not deprive him of an opportunity to challenge the foreclosure proceedings or the notice of default," and "[p]laintiff offer[ed] no basis upon which he [could] assert his ex-wife's rights in this matter," and noting that if plaintiff's ex-wife "had no interest in the property at the time she allegedly did not receive notice, there would be no violation [of California Civil Code 2923.5]"); *Alvarez v. Lake County Board of Supervisors*, No. CV 10–1071 NJV, 2010 WL 3619558, *8 (N.D. Cal. Sept. 13, 2010) (holding that plaintiffs who no longer owned the property at issue lacked standing to sue the county board of supervisors for violating their right to essential use of the land); *Murillo v. Lehman Brothers Bank FSB*, C 09-00500 JW, 2009 WL 2160578, *2 (N.D. Cal. July 17, 2009) (dismissing the claims of a plaintiff for, *inter alia*, wrongful foreclosure, UCL, and breach of the covenant of good faith and fair dealing, on lack of standing grounds, on the basis that she was not an obligor on the loan or an owner of the property because the deed of trust securing the loan and an interspousal grand deed stated that her ex-husband owned the property "as his sole and separate property").

Even if Brown did perfect a 50% interest in the property, he deeded the entire interest to others – half to Gardner, such that she owned 75% of the property, and the other half to Warren, such that she owned 25% of the property – on July 24, 2008. Thus, assuming he ever held a cognizable interest in the property, Brown held the interest only from December 27, 2004 to July 24, 2008. All of the factual allegations against defendants concern their attempts to collect payment on the loan, review of a loan modification application, and nonjudicial foreclosure proceedings. The complaint is vague as to when these activities occurred, but it appears that none took place on or before July 24, 2008.

The court therefore issues an order to show cause on or before **February 13, 2014** why it should not dismiss Brown's claims for lack of standing. Any response should include evidence and legal argument demonstrating that Brown perfected an interest in 50% of the property in 2004,

1    and that his current claims are based on conduct by defendants that occurred prior to July 24,

2    2008.

3    　　　Even if Brown is able to demonstrate that he has Article III standing, however, – i.e., even

4    if he did acquire a legally cognizable interest in the property and a cause of action against

5    defendants accrued before he conveyed that interest to Gardner and Warren – the court would still

6    dismiss Brown's claims for lack of standing because he failed to disclose the claims on his

7    bankruptcy schedule.

8    　　　　　　**b.**　　　**Whether Brown Lacks Standing Because He Filed a Bankruptcy**

9    　　　　　　　　　　**Petition**

10   　　　11 U.S.C. § 541(a) provides that the commencement of a bankruptcy case "creates an

11   estate." Under § 541(a), with certain exceptions not applicable here, property of a bankruptcy

12   estate includes "all legal or equitable interests in property held by the debtor when the petition is

13   filed." This includes causes of action. See *In re Lahijani*, 325 B.R. 282, 287 (9th Cir. BAP

14   2005) ("Causes of action owned by the trustee are intangible items of property of the estate that

15   may be sold. These include causes of action owned by the debtor as of the filing of the case");

16   see also *Cusano v. Klein,* 264 F.3d 936, 945 (9th Cir. 2001) ("[A]ssets of the estate properly

17   included any of Cusano's causes of action"); *Sierra Switchboard Co. v. Westinghouse Electric

18   Corp.*, 789 F.2d 705, 709 (9th Cir. 1986) ("[P]ersonal injury . . . claims become part of the

19   bankruptcy estate under section 541"); *In re Michael*, 423 B.R. 323, 330 (Bankr. D. Idaho 2009)

20   ("Debtors' legal and equitable interests in the causes of action against Smith for professional

21   malpractice constituted property of the estate"); *In re Hettick*, 413 B.R. 733, 752 (Bankr. D. Mo.

22   2009) ("[A]ssets of the estate properly include any of the debtor's causes of action," citing

23   *Cusano*, 264 F.3d at 945); *id.* ("If the cause of action accrued prior to a debtor's petition date,

24   it is an asset that must be scheduled. . . . Moreover, the accrued cause of action is property of

25   the estate even if the debtors were unaware of the claim when they filed for bankruptcy

26   protection"); *In re Henson*, No. 98–51326–ASW, 2006 WL 3861370, *3 (Bankr. N.D. Cal. 2006)

27   (If a "debtor could raise a claim at the commencement of the bankruptcy case, the claim becomes

28   the exclusive property of the bankruptcy estate"); *In re Richards*, 57 B.R. 662, 663 (Bankr. D.

Nev. 1986) ("Estate property includes personal injury causes of action held by the debtor when the petition is filed").

Brown challenges defendants' collection activity and the initiation of non-judicial foreclosure proceedings. All of the challenged conduct occurred prior to March 2, 2011, the date the property was sold at a trustee's sale. Brown filed a bankruptcy petition on May 14, 2012. Accordingly, his claims against defendants accrued before he filed sought bankruptcy protection, and thus became the property of his bankruptcy estate.

Because Brown's claims against defendants became property of his bankruptcy estate, he was required to list them on his bankruptcy schedules. See e.g., *In re Edwards*, BAP No. CC–11–1010–PaMkAl, 2011 WL 4485560, *4 (9th Cir. BAP Aug. 26, 2011) ("Legal claims and causes of action held by a debtor against others existing at the time of the bankruptcy filing become property of the estate, and must be listed in the debtor's bankruptcy schedules," citing *In re City & County of San Francisco v. PG & E Corp.*, 433 F.3d 1115, 1126 (9th Cir. 2006), and *Sierra Switchboard Co.*, 789 F.2d at 708).

"[P]roperty that is neither abandoned [by the trustee of the estate] nor administered remains property of the estate even after the case is closed." *In re Lopez*, 283 B.R. 22, 28 (9th Cir. BAP 2002); see also 11 U.S.C. § 554(d) ("Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate"). Thus, "[u]nscheduled claims pass to the trustee and are not abandoned, even though the estate is closed or the plan is confirmed." *In re Hettick*, 413 B.R. at 752 (internal citation omitted). See also *In re Edwards*, 2011 WL 4485560 at *4 ("An unscheduled asset, whether by accident or intent, is property of the estate, and remains so even after the bankruptcy case is closed, unless explicitly abandoned by the trustee," citing *Cusano*, 264 F.3d at 946). "An abandonment requires an affirmative act of the trustee, or some other clear evidence of the trustee's intent to abandon the property." *Id.* (citing *In re Pace*, 146 B.R. 562, 566 (9th Cir. BAP 1992)); see also 11 U.S.C. § 554(a) ("After notice and a hearing, the trustee may abandon

23

1   any property of the estate that is burdensome to the estate or that is of inconsequential value and

2   benefit to the estate").

3       "[T]he bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on

4   behalf of the estate." *Estate of Spirtos v. One San Bernardino County Super. Ct. Case Numbered*

5   *SPR 02211*, 443 F.3d 1172, 1175 (9th Cir. 2006).  See 11 U.S.C. § 323(a) (" The trustee in a

6   case under this title is the representative of the estate.  The trustee in a case under this title has

7   capacity to sue and be sued").  Although Brown listed the property on Schedule A,[66] he did not

8   disclose that he asserted claims for damages or other types of relief against defendants based on

9   their conduct respecting the property.  Consequently, the claims he alleges in this action remained

10  property of the bankruptcy estate even after Brown's bankruptcy case closed on November 16,

11  2012.

12      Brown does not allege that the trustee took affirmative action or evidenced a clear intent

13  to abandon the claims.  Brown therefore lacks standing to assert the claims pled in this action.

14  See *In re Edwards*, 2011 WL 4485560 at *3 ("The bankruptcy court concluded that, because the

15  claims for damages stated in the complaint were on account of an allegedly wrongful foreclosure

16  that occurred before Edwards filed her bankruptcy petition, those claims became property of the

17  bankruptcy estate on the filing of the petition.  As a result, the bankruptcy court concluded, the

18  chapter 7 trustee, and not Edwards, was the only party with standing to pursue the claims, and that

19  unless and until the trustee abandoned the claim, Edwards could not assert them.  We agree with

20  the bankruptcy court"); *In re Lopez*, 283 B.R. at 32 (Klein, J., concurring) ("[I]n the case of an

21  omitted cause of action [from the schedules], the trustee is the real party in interest [able to

22  prosecute the claim] and the more correct defenses are that the action is not being prosecuted by

23  the real party in interest and that the debtor lacks standing").

24              **c.    Conclusion Regarding Brown's Standing**

25      For the reasons stated, Brown's claims must be dismissed because it appears that he lacks

26  Article III standing and because his claims are property of his bankruptcy estate and have not been

27  _____

28      [66]Schedules at 7.

24

abandoned by the trustee.  If Brown wishes to remain a plaintiff in this case he must respond to the court's order to show cause why the claim should not be dismissed for lack of Article III standing by **February 13, 2014**, and must allege in any amended complaint facts that show the trustee of his bankruptcy estate abandoned his claims against defendants.[67]

### D.    Whether the Court Should Stay the Action under the *Colorado River* Abstention Doctrine

#### 1.    Legal Standard Governing *Colorado River Abstention*

Defendants next argue that the court should stay the action under the *Colorado River* abstention doctrine pending the state court's resolution of *Gardner I*.[68]  "[G]iven the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," the general rule is that "as between state and federal courts, . . . 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976) (citing *McClellan v. Carland*, 214 U.S. 268, 282 (1910)).  The *Colorado River* abstention doctrine, however, permits federal courts to dismiss or stay proceedings pending before them "in [certain] situations involving the contemporaneous exercise of concurrent jurisdiction." *Colorado River*, 424 U.S. at 817; see also *Smith v. Central Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1032-33 (9th Cir. 2005) ("In *Colorado River*, the Supreme Court was concerned with the problem posed by the contemporaneous exercise of concurrent jurisdiction by state and federal courts," citing *Gilbertson v. Albright*, 381 F.3d 965, 982 n. 17 (9th Cir. 2004) (en banc)).  "In such cases, the Court recognized there may be circumstances in which traditional abstention principles do not apply, yet considerations of wise judicial administration, giving regard to conservation of judicial

---

[67]Because Brown's claims have been dismissed, the remaining sections of this order concern only plaintiff Gardner's claims.  The court will refer to Brown and Gardner as "plaintiffs" only to the extent necessary to discuss their state court action or actions they took in this case prior to the date of this order.

[68]See RJN, Exh. 17 (Complaint in *Gardner, et al. v. Bank of America, N.A., et al.*, Case No. BC 500353).

1    resources and comprehensive disposition of litigation, nonetheless justify a decision to stay or

2    dismiss federal proceedings pending resolution of concurrent state court proceedings." *Smith,* 418

3    F.3d at 1033 (quotation marks and citations omitted).   "Such circumstances are, however,

4    exceedingly rare." *Id.*

5        "To decide whether a particular case presents the exceptional circumstances that warrant

6    a *Colorado River* stay, the district court must carefully consider 'both the obligation to exercise

7    jurisdiction and the combination of factors counseling against that exercise.'" *R.R. Street & Co.*

8    *Inc. v. Transport Ins. Co.*, 656 F.3d 966, 978 (9th Cir. 2011) (quoting *Colorado River*, 424 U.S.

9    at 818).   The Ninth Circuit has identified eight factors relevant in assessing the propriety of a stay

10   or dismissal under *Colorado River*.   They are: "(1) which court first assumed jurisdiction over any

11   property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal

12   litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state

13   law provides the rule of decision on the merits;(6) whether the state court proceedings can

14   adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and

15   (8) whether the state court proceedings will resolve all issues before the federal court." *R.R.*

16   *Street & Co.*, 656 F.3d at 978-79.   "The factors relevant to a given case are subjected to a flexible

17   balancing test, in which one factor may be accorded substantially more weight than another

18   depending on the circumstances of the case, and 'with the balance heavily weighted in favor of

19   the exercise of jurisdiction.'" *Holder v. Holder*, 305 F.3d 854, 870-71 (9th Cir. 2002) (quoting

20   *Moses H. Cone Memorial Hospital v. Mercury Construction Co.*, 460 U.S. 1, 16 (1983)).

21        "The threshold question in deciding whether *Colorado River* abstention is appropriate is

22   whether there are parallel federal and state suits." *Chase Brexton Health Services, Inc. v.*

23   *Maryland*, 411 F.3d 457, 463 (4th Cir. 2005).        In the Ninth Circuit, "exact parallelism [between

24   the two suits] . . . is not required.   It is enough if the two proceedings are 'substantially similar.'"

25   *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989); see also *County of Marin v. Deloitte*

26   *Consulting LLP*, No. C 11–00381 SI, 2011 WL 3903222, *1 (N.D. Cal. Sept. 6, 2011) ("The

27   threshold for applying the *Colorado River* doctrine is whether the two cases are substantially

28   similar.   Substantial similarity does not mean that the cases must be identical").   This inquiry

involves assessing whether the suits involve the same parties and the same claims.  See *Nakash*, 882 F.2d at 1416 ("The present parties are all named in the California suit"); see also *Illinois School Dist. Agency v. Pacific Ins. Co., Ltd.*, 471 F.3d 714, 718 (7th Cir. 2006) ("The court also rejected Pacific's argument that the district court should abstain under [*Colorado River*] because the proceedings were not parallel and because they were between different parties involving different contracts"); *Lumen Const., Inc. v. Brant Const. Co., Inc.*, 780 F.2d 691, 695 (7th Cir. 1985) (in deciding whether cases are parallel, a court should look "for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case"); *Crawley v. Hamilton County Commissioners*, 744 F.2d 28, 31 (6th Cir. 1984) (holding that the state proceeding were not parallel because different defendants were named and the federal complaint included more allegations); *Innovation Ventures, LLC v. Ultimate Lifestyles, LLC*, No. 4:08-CV-232, 2009 WL 1490589, *3 (E.D. Tex. May 27, 2009) ("The Court has weighed the *Colorado River* factors here and finds that abstention is not appropriate at this time.  Primarily, this case and the Dallas state court case involve different parties"); *Becker v. Granholm*, 272 F.Supp.2d 643, 645 (E.D. Mich. 2003) ("[T]he *Colorado River* abstention doctrine is inapplicable because the requirement of a 'parallel state proceeding' is lacking where, as here, the state and federal lawsuits involve different parties").  The inquiry also involves asking whether the state and federal disputes, in a more general sense, involve the same facts.  See *Nakash*, 882 F.2d at 1416 ("All of these disputes concern how the respective parties have conducted themselves since Nakash purchased a portion of Guess").  Where the federal action appears to be a "spin-off" of more comprehensive state litigation, the actions may be substantially similar.  See *id.* (noting that courts "should be particularly reluctant to find that [ ] actions [a]re not parallel when the federal action is but a 'spin off' of more comprehensive state litigation").

In determining whether two suits are substantially similar, if the district court has "a substantial doubt as to whether the state proceedings will resolve the federal action[, the doubt] precludes the granting of a [*Colorado River*] stay."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993).  As the Supreme Court has noted,

1   "[w]hen a district court decides to dismiss or stay under *Colorado River*, it

2   presumably concludes that the parallel state-court litigation will be an adequate

3   vehicle for the complete and prompt resolution of the issues between the parties.

4   If there is any substantial doubt as to this, it would be a serious abuse of discretion

5   to grant the stay or dismissal at all.  Thus, the decision to invoke *Colorado River*

6   necessarily contemplates that the federal court will have nothing further to do in

7   resolving any substantive part of the case, whether it stays or dismisses." *Moses*

8   *H. Cone Memorial Hospital*, 460 U.S. at 28.

9   For this reason, "[a] district court may enter a *Colorado River* stay order only if it has 'full

10  confidence' that the parallel state proceeding will end the litigation." *Intel Corp.*, 12 F.3d at 913

11  (citing *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988)).

12          **2.      Whether the Court Should Stay or Dismiss the Case under *Colorado***

13          ***River***

14          *Gardner I* involves most of the same parties as the instant case: it was brought by the same

15  two plaintiffs against BofA, Wells Fargo, and First American.  Gardner and Brown filed this

16  action against those same defendants as well as No Red Tape and First Horizon.  As noted, No

17  Red Tape has since been dismissed.  First Horizon, however, is still a party.  The defendants in

18  the two lawsuits are therefore not identical.  Although resolution of the state court case may

19  resolve Gardner's claims against First Horizon under the doctrines of issue and/or claim

20  preclusion, absent any argument by defendants that First Horizon is in privity with them,[69] the

21  _____

22          [69]Under California law, the party asserting issue preclusion must demonstrate three main

23  elements: "(1) the issue necessarily decided in the previous proceeding is identical to the one that

24  is sought to be relitigated; (2) the previous proceeding terminated with a final judgment on the

25  merits; and (3) the party against whom collateral estoppel is asserted was a party to or in privity

26  with a party in the previous proceeding." *Coscia v. McKenna & Cuneo*, 25 Cal.4th 1194, 1201

27  n. 1 (2001); see also *Heath v. Cast*, 813 F.2d 254, 258 (9th Cir 1987) (observing that "California

28  courts apply a three-step analysis to determine whether collateral estoppel is applicable to a

    particular issue," including that "the party against whom collateral estoppel is asserted must have

    been a party, or in privity with a party, to the prior adjudication," citing *Bernhard v. Bank of*

    *America*, 19 Cal.2d 807, 813 (1942)).

1  court declines to find that resolution of the state court case would necessarily resolve plaintiffs'

2  claims against First Horizon as well.

3      The two cases also do not involve identical claims.  As in this case, plaintiffs in *Gardner*

4  *I* assert claims for breach of contract and wrongful foreclosure (a cause of action plaintiffs

5  denominated "void trustee's deed upon sale" in state court).  Unlike this case, however, plaintiffs

6  do not in *Gardner I* assert claims for violation of the FDCPA, the RFDCPA, TILA, or the UCL;

7  they also do not state a claim for breach of the implied covenant of good faith and fair dealing.[70]

8      Defendants contend the cases are substantially similar because "[p]laintiffs' pending state-

9  court action concerns the validity of a non-judicial foreclosure of the Property.  Both actions

10 involve the disposition of that real property.  Both actions name Defendants and challenge

11 Defendants' authority to foreclose on the Property.  Both actions argue that Defendants must prove

12 that they were authorized to foreclose."[71]  Essentially, defendants maintain that the general issues

13 to be decided in the state court action will be dispositive of the general issues to be decided by this

14 court.  Defendants, however, have overgeneralized the claims in the two cases.

15     Should the state court determine that the trustee's sale was not void, that plaintiffs are not

16 entitled to have title quieted in their favor, that defendants are not guilty of fraud, and that

17 defendants did not breach their contract with Gardner, most of Gardner's claims in this case would

18 likely be claim- or issue-precluded because they call for determination of the same issues.

19 Whether defendants had standing to initiate non-judicial foreclosure is an example of such an

20 issue.  Even were the state court to resolve all of Gardner's claims against her, however, the court

21 cannot say that all aspects of her FDCPA claim – which includes allegations that defendants

22 harassed her, failed to disclose to her that they were attempting to collect a debt, used a name

23 other than the true name of their business, and failed to send her a written notice stating that the

24 debt would be assumed to be valid unless she disputed its validity – would necessarily have been

25 _____

26 [70]Compare RJN, Exh. 17 (Complaint in *Gardner I*) with Complaint.  Plaintiffs' state court
   complaint also alleges claims for quiet title, declaratory relief, fraud and deceit, negligence, and
27 injunctive relief.  (See RJN, Exh. 17 (Complaint in *Gardner I*).)

28 [71]Motion at 5.

resolved by the state court's decision.  The same is true regarding Gardner's breach of contract claim.  The breach of contract claim in *Gardner I* alleges a breach by Wells Fargo of the deed of trust, as plaintiffs contend that under that document, Wells Fargo "promised not to sell the plaintiffs['] real property and [not to] agree[ ] to a short sale," but later did so.[72]  The resolution of this claim would not affect the breach of contract claim Gardner asserts in this case, which seeks damages because the deed of trust "required payments made by plaintiff to be applied properly to the note," and alleges that defendants "fail[ed] to apply the payments made by Plaintiffs [from] May 2009 . . . through March 2010."[73]  Thus, although the claims are perhaps related, it does not appear at this juncture that Gardner's breach of contract claim in the federal action would necessarily be resolved in the state court case.  In overview, plaintiffs' state court complaint appears singularly focused on defendants' standing to initiate non-judicial foreclosure; the federal court complaint, by contrast, appears to focus additionally on defendants' purportedly unlawful behavior in attempting to collect a debt prior to the initiation of non-judicial foreclosure proceedings and on their misapplication of loan payments.

  For these reasons, the court cannot say that the actions are parallel or that the federal action is a "spin-off" of more comprehensive state litigation.  Although the defendants in the two cases overlap, as do many factual allegations and legal issues, the cases have some differences; these differences, in the court's view, preclude a finding that the cases are parallel because it does not appear that resolution of the state court action will necessarily resolve the case pending before this court as well.  For this reason, the court does not believe it can order a *Colorado River* stay in this case.  Compare *Silvaco Data Systems, Inc. v. Technology Modeling Associates, Inc.*, 896 F. Supp. 973, 976 (N.D. Cal. 1995) ("Although the state and federal actions are not identical, they include

---

[72]RJN, Exh. 17 at 135 (*Gardner I* Complaint, ¶ 51).  The breach of contract claim is also based on an allegation that defendants agreed in the deed of trust that only the lender could appoint a successor trustee, and that BofA – which was not the lender – purported to do so.  (*Id.*)  It also asserts that while the lender can declare a default under the deed of trust, defendants breached the contract by declaring a default when they were not the lenders.  (*Id.*)

[73]Complaint, ¶ 32.

1    extremely similar claims that all arise out of the long-standing competitive feud between TMA and
2    Silvaco. . . .   The allegedly false advertising materials that are the whole basis for Silvaco's
3    federal suit are encompassed within the broader dispute in state court as evidence of TMA's
4    alleged continuing interference with prospective economic advantage and unfair competition.
5    Although Silvaco does not assert a Lanham Act claim in state court, the crux of Silvaco's
6    allegations with respect to the advertising materials is the same in both fora: that the
7    advertisements were false and caused damage to Silvaco's business and reputation. In this sense,
8    Silvaco's federal action is merely a spin-off of the ongoing battle in state court. . . .   The mere
9    fact that the claims in state and federal court are not based on exactly the same laws does not
10   preclude a finding of substantial similarity"); *Puck v. WP Pacific, Inc.*, No. SA CV 06-1108 DOC
11   (MLGx), 2007 WL 2315952, *4 (C.D. Cal. Jan. 17, 2007) ("The third factor weighs heavily in
12   favor of abstention, as Plaintiff himself concedes that the factual and legal issues in this case are
13   so similar as to necessitate parallel discovery and adjudication should the Federal Action
14   proceed."). Even were the court to consider the *Colorado River* factors, however, as it does
15   below, it would still determine that abstention is improper in this case.

16                **a.     Which Court First Assumed Jurisdiction over Any Res at Stake**
17          "In proceedings *in rem* or *quasi in rem*, the forum first assuming custody of the property
18   at issue has exclusive jurisdiction to proceed." *40235 Washington Street Corp. v. Lusardi*, 976
19   F.2d 587, 589 (9th Cir. 1992) (citing *Colorado River*, 424 U.S. at 819, and *Donovan v. City of
20   Dallas*, 377 U.S. 408, 411 (1964)); see *Federal Home Loan Mortgage Corp. v. Ha*, 145 F.3d
21   1337, 1998 WL 340118, *1 (9th Cir. June 1, 1998) (Unpub. Disp.) ("Although the existence of
22   a case in one forum does not generally defeat jurisdiction in another, there is a firmly-rooted
23   exception to this rule: in cases concerning real property, whichever forum assumes control over
24   the property first has exclusive jurisdiction to proceed"). Thus, if a plaintiff brings an action to
25   quiet title in state court, and a subsequent suit to quiet title in federal court, "the first prong of the
26   *Colorado River* abstention test is dispositive" because quiet title actions are *in rem* under

27
28
                                              31

California law.  As a result, the federal court must dismiss or stay the case pending before it. *40235 Washington*, 976 F.2d at 589.

Here, plaintiffs' state court action, which asserted a quiet title claim, was filed before this action.  As a consequence, the state court was the first to assert jurisdiction over the property. The rule articulated by *40235 Washington*, however, is not dispositive here, since Gardner does not plead a quiet title claim in this court or any other form of *in rem* action.  The court, therefore, will not be exercising jurisdiction over the property.  Because Gardner seeks only damages in the federal suit and does not seek to recover possession of the property, all of her federal court claims are *in personam*.  Cf. *Chapman v. Deutsche Bank National Trust Co.*, 651 F.3d 1039, 1045-46 (9th Cir. 2011) (holding that state court unlawful detainer and federal court quiet title proceedings were both *in rem*, and that any recovery on plaintiffs' wrongful foreclosure claim, which sought actual and punitive damages only, did not change the nature of the action because it was "incidental to the central relief requested in the complaint: possession of, and title to, the Property").  Accordingly, although the state court has asserted jurisdiction over the property, the proceedings before this court can proceed regardless.  See *Remington v. Mathson*, NO. CV09-4547 NJV, 2010 WL 1233803, *10 (N.D. Cal. Mar. 26, 2010) (finding that state and federal cases were not substantially similar where state court claims included, *inter alia*, a claim for quiet title and federal claims included claims brought under federal environmental laws that were not asserted in state court, and noting that "[u]nder the first *Colorado River* factor, the state has *in rem* jurisdiction because the state action includes a quiet title claim.  While the first factor weighs in favor of abstention and was held to be dispositive in *40235 Washington Street Corp.*, the situation here is distinguishable from *40235 Washington Street Corp.* because no quiet title claim was brought in this federal action"); *Rowland v. Novus Financial Corp.*, 949 F.Supp. 1447, 1457 (D. Haw. 1996) (holding that the *40235 Washington* rule that "where both the federal and state court actions were to quiet title to a parcel of real property[,] . . . does not apply in the instant case because the federal TILA action here is not an *in rem* proceeding.  Further, unlike the [*40235 Washington*], here both the state and federal cases do not involve the same question;

rather the TILA issue was raised only in the federal forum"). This first factor therefore does not weigh in favor of abstention.

### b.      The Inconvenience of the Federal Forum

There is no indication that the federal forum would be any more or less convenient for the parties that state court. Both this court and the Los Angeles Superior Court are located in Los Angeles, which is about half an hour from Sherman Oaks, where the property is located. Accordingly, this factor does not weigh in favor of abstention.

### c.      The Order in Which the Forums Obtained Jurisdiction

This factor addresses the sequence in which the courts obtained jurisdiction, and examines the relative progress in each case. See *R.R. Street & Co., Inc.*, 656 F.3d at 980 (instructing that courts should look to see which action was filed first but "in a pragmatic, flexible manner with a view to the realities of the case at hand" (citing *Moses H. Cone Memorial Hospital*, 460 U.S. at 21)). "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone Memorial Hospital*, 460 U.S. at 21.

Here, as noted, the state court action was filed first – on February 1, 2013. As of the date defendants filed their motion to dismiss in this court, the state court had ruled on one motion; defendants' demurrer and motion to expunge lis pendens. The federal action was filed on October 3, 2013; the motion to dismiss, filed October 30, 2013, is the first the court will decide. The state action has been pending approximately eight months longer than this action and the actions are at essentially equivalent stages. Thus, while this factor weighs against the exercise of jurisdiction because the state court case has proceeded farther than the federal case, it does so only slightly. Compare *R.R. Street*, 656 F.3d at 980 (concluding that the state court's "significant progress" toward resolution of dispute weighed against exercise of jurisdiction even though federal court was first to obtain jurisdiction).

### d.      The Desire to Avoid Piecemeal Litigation

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters, (Philippines),*

1   *Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir.1988).  "The mere possibility of piecemeal

2   litigation does not constitute an exceptional circumstance," however.  *R.R. Street & Co. Inc.*, 656

3   F.3d at 980.  "[T]he case must raise a 'special concern about piecemeal litigation,' which can be

4   remedied by staying or dismissing the federal proceeding."  *Id.* (quoting *Travelers Indem. Co. v.*

5   *Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990)).  In *Colorado River*, for example, the Supreme

6   Court determined that there was a strong legislative policy under the McCarran Amendment of

7   avoiding "piecemeal adjudication of water rights in a river system" because water rights are highly

8   interdependent, and inconsistent dispositions can seriously  undermine the system of allocation of

9   rights.  See *Colorado River*, 424 U.S. at 819; see also *id.* at 826 (Stewart, J., dissenting) (noting

10  that the determination of water rights involves a two-step process: first, processing of new claims

11  to water based on recent appropriations, and second, "integrating [ ] new awards of water rights

12  with all past decisions awarding such rights into one all-inclusive tabulation for each water

13  source").

14          Here, as noted, the state and federal cases raise many of the same factual and legal issues.

15  There is thus no question that hearing them separately will result in piecemeal litigation; both

16  courts will have to decide the propriety of defendants' initiation of non-judicial foreclosure

17  proceedings.  Moreover, like the strong legislative policy in *Colorado River* against inconsistent

18  judgments regarding water rights, California has a strong legislative policy against inconsistent

19  judgments concerning the validity of non-judicial foreclosure proceedings.  California's

20  comprehensive statutory scheme governing non-judicial foreclosure is designed, *inter alia*, to

21  "ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide

22  purchaser."  *Gomes*, 192 Cal.App.4th at 1154; see *Moeller v. Lien*, 25 Cal.App.4th 822, 830

23  (1994) (same).  Inconsistent judgments regarding a defendant's standing to initiate non-judicial

24  foreclosure proceedings would serve to undermine the goal of finality.  In this case, the concern

25  regarding inconsistent judgments is lessened slightly by the fact that judgments regarding the

26  propriety of defendants' initiation of non-judicial foreclosure proceedings will not affect a bona

27  fide purchaser of the property, as Gardner seeks only damages in the federal case, not recovery

28  of the property.  As respects her FDCPA and breach of contract claims, moreover, there is no risk

34

of inconsistent judgments because Gardner's state court action does not allege that defendants harassed her in connection with collection of a debt or misapplied loan payments.  Accordingly, while this factor weighs in favor of abstention, it does so only slightly.

          e.        **Whether Federal or State Law Provides the Rule of Decision on the Merits and Whether the State Court Proceedings Can Adequately Protect the Rights of the Federal Litigants**

The court addresses these factors together as they raise overlapping issues.  Here, California law will govern all of plaintiffs' state court claims and most of their federal court claims except for their claims under the FDCPA and TILA.  Both the Supreme Court and the Ninth Circuit have instructed that "the presence of federal-law issues must always be a major consideration weighing against surrender."  *Moses H. Cone Memorial Hospital*, 460 U.S. at 25; see also *Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990) (stating this principle and further observing that the presence of state law issues weighs against jurisdiction only in "'in some rare circumstances,'" quoting *Moses H. Cone Memorial Hospital*, 460 U.S. at 26)).  Consequently, the impact of plaintiffs' FDCPA and TILA claims cannot be so easily discounted, and their presence in this litigation and absence in the state court action weighs in favor of the exercise of jurisdiction here.

The state court's ability adequately to protect the rights of the parties also supports this analysis.  "A district court may not stay or dismiss the federal proceeding if the state proceeding cannot adequately protect the rights of the federal litigants.  For example, if there is a possibility that the parties will not be able to raise their claims in the state proceeding, a stay or dismissal is inappropriate."  *R.R. Street & Co. Inc.*, 656 F.3d at 981; see also *Holder*, 305 F.3d at 871 (stating that a state forum was inadequate where "state court proceedings will not reach the key issues that must be adjudicated to get relief"); *Travelers Indemnity Co.*, 914 F.2d at 1370 ("This factor involves the state court's adequacy to protect federal rights, not the federal court's adequacy to protect state rights" and "'is more important when it weighs in favor of federal jurisdiction,'" quoting *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986)); compare *American Intern. Underwriters (Philippines), Inc. v. Continental Ins. Co.*, 843

1    F.2d 1253, 1259 (9th Cir. 1988) ("[T]he state court procedure in this case that AIU labels

2    inadequate is nothing more than a set of evidentiary rules AIU does not like.  As Continental

3    correctly points out, [the Supreme Court and Ninth Circuit have not] suggested that adverse

4    evidentiary rulings could ever rise to the level of rendering a state court proceeding inadequate").

5            Gardner has alleged FDCPA and TILA claims in this action and has asserted claims against

6    an additional defendant that she and Brown did not sue in state court.  The federal claims could

7    be filed in state court.  See 15 U.S.C. § 1692k(d) (stating that an action under the FDCPA "may

8    be brought in any appropriate United States district court . . . or in any other court of competent

9    jurisdiction"); 15 U.S.C. § 1640(e) (stating that an action under TILA "may be brought in any

10   United States district court, or in any other court of competent jurisdiction"); *Peterson v. United*

11   *Accounts, Inc.*, 638 F.2d 1134, 1135 (8th Cir. 1981) (holding that the FDCPA provides for

12   concurrent state and federal jurisdiction and that FDCPA claims may be brought in state court);

13   *Collins v. Wells Fargo Bank*, No. CV–12–2284–PHX–LOA, 2013 WL 3808097, *8 (D. Ariz.

14   July 23, 2013) (holding that state and federal courts have concurrent jurisdiction over FDCPA

15   claims and stating that "[t]hus, the Arizona courts had subject matter jurisdiction to adjudicate

16   Plaintiff's counterclaim alleging numerous unfair debt collection practices under the FDCPA");

17   *Pangilinan v. Downey Savings and Loan Association,* No. C–11–2016 EMC, 2011 WL 2837587,

18   *4 (N.D. Cal. July 18, 2011) ("[S]tate and federal courts have concurrent jurisdiction over TILA

19   claims"); *In re Countrywide Financial Corp. Mortgage Marketing & Sales Practices Litigation*,

20   No. 08–CV–1903–DMS, 2008 WL 5450351, *5 (S.D.Cal. Dec.30, 2008) ("The existence of

21   concurrent jurisdiction [over TILA] indicates Congress intended for the balance of judicial

22   responsibility for these claims be shared between state and federal courts").

23           Defendants, who bear the burden of proof, have not shown, however, that plaintiffs could

24   amend their state court complaint to include new causes of action and an additional defendant,

25   given that the state court has already sustained defendants' demurrer and granted leave to amend

26   the causes of action set forth in the original complaint, and given that plaintiffs knew the facts

27   underlying the claims pled here but not in state court before they commenced the state court action

28   almost a year ago.  Under California law, "[t]he trial court has wide discretion in determining

whether to allow [an] amendment, but the appropriate exercise of that discretion requires the trial court to consider a number of factors: 'including the conduct of the moving party and the belated presentation of the amendment.'. . . The law is well settled that a long deferred presentation of the proposed amendment without a showing of excuse for the delay is itself a significant factor to uphold the trial court's denial of the amendment. 'The law is also clear that even if a good amendment is proposed in proper form, unwarranted delay in presenting it may – of itself – be a valid reason for denial'" *Leader v. Health Industries of America, Inc.*, 89 Cal.App.4th 603, 613 (2001) (internal citations omitted); see also *Permalab-Metalab Equipment Corp. v. Maryland Cas. Co.*, 25 Cal.App.3d 465, 472 (1972) ("[W]hether [ ] an amendment [to a pleading] shall be allowed rests in the sound discretion of the trial court. . . . [C]ourts are much more critical of proposed amendments . . . when offered after long unexplained delay, or on the eve of trial or where there is a lack of diligence, or there is prejudice to the other party"). Defendants state only that "[p]laintiffs can assert the same claims in the State Court action."[74] They do not address whether the state court would permit plaintiffs to amend their complaint now, after a year, to state new claims and add a new party based on conduct that occurred prior to the filing of their complaint. Because there is a possibility that plaintiffs could not raise their federal claims or claims against First Horizon in the state court action at this late point, this factor also does not weigh in favor of abstention under *Colorado River*. *R.R. Street & Co. Inc.*, 656 F.3d at 981. To the extent Gardner could amend to assert the claims in state court, moreover, the factor would weigh only slightly in favor of abstention since it "is more important when it weighs in favor of federal jurisdiction." *Travelers Indemnity Co.*, 914 F.2d at 1370.

### f.    The Desire to Avoid Forum Shopping

"To avoid forum shopping, courts may consider 'the vexatious or reactive nature of either the federal or the state litigation.'" *R.R. Street & Co. Inc.*, 656 F.3d at 981 (quoting *Moses H. Cone Memorial Hopsital*, 460 U.S. at 17 n. 20); see also *American Intern. Underwriters*, 843 F.2d at 1259 ("After two-and-a-half years, AIU is abandoning its state court case solely because

---

[74]Motion at 6.

1   it believes that the Federal Rules of Evidence are more favorable to it than the state evidentiary

2   rules.  This epitomizes forum shopping").

3          Here, there is no clear evidence of forum shopping.  Plaintiffs filed this action prior to

4   issuance of the state court order granting defendants' demurrer and expunging the lis pendens and

5   prior to the hearing on that motion as well.  While it is possible plaintiffs believed they would not

6   prevail in state court, there is no evidence that indicates this is true.  The court, moreover,

7   discerns no reason why a federal forum is necessarily more advantageous to plaintiffs or why they

8   would have a compelling motivation to bring the case here.  This is especially true since, as noted,

9   the federal case includes additional federal claims and an additional defendant[75] that is not involved

10  in the state court action.  See *R.R. Street & Co., Inc.*, 656 F.3d at 982 ("Prior to filing the

11  Federal Action, Street/National Union had not previously asserted their claims against Transport,

12  and we are cautious about labeling as 'forum shopping' a plaintiff's desire to bring previously

13  unasserted claims in federal court"); but see *U.S. Bank Nat. Ass'n v. Johnny A. Ribeiro, Jr.*

14  *Family Trust*, NO. 3:11-CV-00691-RCJ, 2012 WL 280709, *1 (D. Nev. Jan. 31, 2012) ("The

15  filing of separate actions in separate fora in order to recover the same damages, but against

16  different parties, strongly indicates forum-shopping").  Because there is no clear evidence of

17  forum shopping, this factor does not weigh in favor of a *Colorado River* stay.

18                    **g.      Whether State Court Proceedings Will Resolve All Issues Before**

19                    **        the Federal Court**

20         As noted, the critical difference between the two cases is the addition to the federal action

21  of two federal claims and an additional defendant, as well as a resulting difference in the relevant

22  facts.  The court has examined the potentially preclusive effect of a final state court judgment and

23  determined that such a judgment would not resolve all aspects of Gardner's federal court claims

24  and might not bind First Horizon at all.  Even if Gardner secures a judgment in her favor in state

25  court, this will not resolve her FDCPA, TILA, and breach of contract claims.  Stated differently,

26  if defendants prevail in state court, while most of Gardner's claims in this action would be barred

27  _____

28          [75]Indeed, initially there were two additional defendants.

                                                   38

by claim or issue preclusion, her FDCPA, TILA, and breach of contract claims would not be. Nor is it a foregone conclusion that defendants will prevail in state court. *Colorado River* and its progeny permit abstention "only if [the court] has full confidence that the parallel state proceeding will 'be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988) (quoting *Moses H. Cone Memorial Hospital*, 460 U.S. at 28). The possibility that judgment may eventually be entered in defendants' favor in the state case, is therefore insufficient to decline to exercise jurisdiction in this case. See *City and County of San Francisco v. United States*, 930 F.Supp. 1348, 1352 n. 2 (N.D. Cal. 1996) (citing *Intel Corp.*, 12 F.3d at 913) (stating that abstention under *Colorado River* is only appropriate when "the district court has 'full confidence' that the resolution of a concurrent state court action will moot the federal action; if the state court action will moot the federal action only if one of many possible resolutions are reached by the state court, [however,] a federal court may not stay the case before it").

There is no doubt that the similarities between this action and the state court action are marked; most of the claims and issues Gardner advances are raised in both cases. This factor, however, focuses on whether the state court proceedings will resolve *all* of the issues before the federal court. Here, it does not appear, at least at this juncture, that they would.[76] It therefore

---

[76]If the court were to dismiss plaintiffs' federal claims and/or claims against First Horizon, the two cases might at that point be substantially similar, such that a judgment in the state court could resolve all issues before this court. Additionally, were the court to dismiss certain claims with leave to amend, subsequent amendments might clarify that the two cases were substantially similar. For example, amendments to the breach of contract claim might clarify that the claim is based on the same conduct as plaintiffs' state court breach of contract claim. Future amendments to plaintiffs' FDCPA cause of action might clarify that that claim is not based on defendants' harassment of plaintiffs or failure to comply with statutory notice requirements, but on defendants' conduct in making allegedly false statements that they owned plaintiffs' debt. Such a claim would be based on the same facts and legal arguments concerning the validity of the securitization of Gardner's loans that form the basis for plaintiffs' state court claim that no defendant had standing to initiate nonjudicial foreclosure. For these reasons, future proceedings in this case could change the outcome of the *Colorado River* analysis.

1    appears imprudent to enter a *Colorado River* stay at this point, and this factor also weighs against

2    staying the case.

3              **h.    Conclusion Regarding *Colorado River* Analysis**

4              With the exception of the order in which the forums obtained jurisdiction and the desire

5    to avoid piecemeal litigation, the *Colorado River* factors all weigh against abstaining at this

6    juncture.  As noted, abstention is only warranted in exceptional circumstances and because, for

7    the reasons the court has outlined, defendants have not met their burden of showing that this is

8    such a case, the court concludes that a *Colorado River* stay is not appropriate at this time.  Cf.

9    *Peak Performance Nutrition v. Media Power, Inc.*, 669 F.Supp.2d 1176, 1181 (C.D. Cal. 2009)

10   (finding abstention not warranted where, *inter alia*, "[t]he suits will involve different parties and

11   will resolve different claims.  The Plaintiffs in both suits are the same, but the state action includes

12   at least four third-party defendants who are not party to the federal suit.  Also, the federal suit

13   includes two defendants, Media Power and Byers, who are not party to the state litigation").

14   Should it become apparent that Gardner's claims are substantially similar to those in *Gardner I*,

15   – e.g., should First Horizon be dismissed from this case or should claims be dismissed that make

16   the causes of action pled in this case duplicative of Gardner's claims in *Gardner I* – and should

17   defendants be able to cure the deficiencies the court has outlined above, defendants may file a new

18   motion seeking a stay under *Colorado River*.[77]

19

20   _____

21        [77]Alternatively, the court notes that the overlap in legal and factual issues as well as the
     possible harm to defendants in having to defend two similar cases simultaneously may make it

22   appropriate to stay the case under *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936).

23   See *id.* ("[T]he power to stay proceedings is incidental to the power inherent in every court to
     control the disposition of the cases on its docket with economy of time and effort for itself, for

24   counsel, and for litigants. . . . How this can best be done calls for the exercise of judgment, which
     must weigh competing interests and maintain an even balance"); see also *CMAX, Inc. v. Hall*, 300

25   F.2d 265, 268 (9th Cir. 1962) ("Where it is proposed that a pending proceeding be stayed, the
     competing interests which will be affected by the granting or refusal to grant a stay must be

26   weighed.  Among these competing interests are the possible damage which may result from the
     granting of a stay, the hardship or inequity which a party may suffer in being required to go

27   forward, and the orderly course of justice measured in terms of the simplifying or complicating

28   of issues, proof, and questions of law which could be expected to arise from a stay").

1    As the court has determined that it will not stay the case, it turns to defendants' arguments

2    regarding the merits of Gardner's claims.  As Gardner's federal claims form the basis of the

3    court's jurisdiction, the court considers them first.

4    **E.    Whether the Court Should Dismiss Gardner's FDCPA Claim**

5    **1.    Legal Standard Governing Claims under the FDCPA**

6    Gardner's first cause of action alleges a violation of the FDCPA.  The FDCPA was enacted

7    "to eliminate abusive debt collection practices by debt collectors, to insure that those debt

8    collectors who refrain from using abusive debt collection practices are not competitively

9    disadvantaged, and to promote consistent State action to protect consumers against debt collection

10   abuses." 15 U.S.C. § 1692(e).  To effectuate this purpose, the Act prohibits a "debt collector"

11   from making false or misleading representations and from engaging in various abusive and unfair

12   practices.

13   To be held liable for a violation of the FDCPA, a defendant must – as a threshold

14   requirement – fall within the Act's definition of "debt collector." See *Heintz v. Jenkins*, 514 U.S.

15   291, 294 (1995); see also, e.g., *Romine v. Diversified Collection Servs.*, 155 F.3d 1142, 1146 (9th

16   Cir. 1998).  The FDCPA defines a "debt collector," in pertinent part, as any person who uses any

17   instrumentality of interstate commerce or the mails in any business the principal purpose of which

18   is the collection of any debts, or who regularly collects or attempts to collect, directly or

19   indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

20   Thus, a "debt collector" under the FDCPA is either (1) "a person" the "principal purpose" of

21   whose business is the collection of debts (whether on behalf of himself or others); or (2) "a

22   person" who "regularly" collects debts on behalf of others (whether or not it is the principal

23   purpose of his business).  "To state a claim for violation of the FDCPA, a plaintiff must allege

24   that the defendant is a 'debt collector' collecting a 'debt.'" *Ines v. Countrywide Home Loans*, No.

25   08cv1267 WQH (NLS), 2008 WL 4791863, *2 (S.D. Cal. Nov. 3, 2008).

26   The statute excludes from its scope "any person collecting or attempting to collect any debt

27   owed or due or asserted to be owed or due another to the extent such activity (I) is incidental to

28   a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was

41

originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor." 15 U.S.C. § 1692a(6)(F). Citing this provision, courts have concluded that mortgage lenders and servicers are not "debt collectors" covered by the statute so long as they took assignment of an interest in the loan prior to default by the debtor. See *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned"); *Nool*, 653 F.Supp.2d at 1052-53 (the definition of a debt collector "does not include [a] consumer's creditors, a mortgage servicing company, or any assignee of the debt, so long as the debt was not in default at the time it was assigned," citing *Perry*, 756 F.2d at 1208); *Carillo v. CitiMortgage, Inc*., No. CV 09-02404 AHM, 2009 WL 3233534, *4 (C.D. Cal. Sept. 30, 2009) (same).

### 2.   Whether Gardner's Complaint Adequately Alleges that Defendants are Debt Collectors

While Gardner asserts her FDCPA claim against all defendants, the only substantive allegations she makes concern Wells Fargo. Gardner contends Wells Fargo told her that if she filed a bankruptcy petition, this would forestall foreclosure. She also asserts that in March 2011, Wells Fargo told her it was processing her loan modification request, but that the property was sold at foreclosure a few days later.[78] From the documents it has judicially noticed, the court gleans that it was First American, acting as Wells Fargo's agent, that filed the notice of default. It was also First American, acting at that point as trustee for BofA, the new beneficiary under the deed of trust, that filed notices of trustee's sale and the trustee's deed upon sale. To the extent Gardner asserts an FDCPA claim against First Horizon, there are no allegations that First Horizon

---

[78]As noted, the court has dismissed Gardner's FDCPA claim with prejudice to the extent it is based on an allegation that none of the defendants held the original promissory note.

took any action with respect to Gardner's loan or property after financing it in 2004.  For that reason, Gardner's FDCPA claim against First Horizon fails, and it must be dismissed.

Moreover, the claim against all defendants must be dismissed because Gardner has not adequately alleged that they are debt collectors.[79]  While Gardner's complaint pleads generally that "Defendants are debt collectors within the meaning of the FDCPA," it contains no substantive allegations that would permit the court to conclude either that it is the principal purpose of any defendant's business to collect debts or that any defendant regularly collects debts owed to another.  Viewing the complaint and the judicially noticeable documents in the light most favorable to Gardner, it appears that Wells Fargo discussed loan modification with Gardner, that BofA, having been assigned the deed of trust, directed First American to foreclose on Gardner's property, and that First Horizon funded Gardner's initial loan.  None of these allegations supports a conclusion that it is the principal purpose of any defendant's business to collect debts or that they regularly collect debts owed to another.  See *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208-09 (9th Cir. 2013) ("The complaint fails to provide any factual basis from which we could plausibly infer that the principal purpose of Wells Fargo's business is debt collection.  Rather, the complaint's factual matter, viewed in the light most favorable to the Schlegels, establishes only that debt collection is some part of Wells Fargo's business, which is insufficient to state a claim under the FDCPA. . . .  The complaint [also fails to provide any factual basis] from which we could plausibly infer that Wells Fargo regularly collects debts owed to someone other than Wells Fargo.  Because NTFN, Inc. assigned the Schlegels' loan and deed of trust to Wells Fargo, Wells Fargo's collection efforts in this case relate only to debts owed to itself. . . . [There is a difference] between debts 'owed to another' and debts originally owed to another but now owed to Wells Fargo"); *Casault v. Federal National Mortgage Association*, 915 F.Supp.2d 1113, 1126 (C.D. Cal. 2012) ("Although Plaintiffs allege Servicer Defendants are debt collectors, they do not support their allegation with any facts that show how Servicer Defendants were acting in a debt collecting capacity within the meaning of the FDCPA.  '[A] plaintiff's obligation to provide the

---

[79]Motion at 15.

'grounds' of his 'entitlement to relief' requires more than labels and conclusions.'  Here, Plaintiffs

have merely labeled the Servicer Defendants debt collectors and repeated the allegations they

raised under their fraud claim"); *Nool*, 653 F.Supp.2d at 1052-53 ("Nothing in the complaint

suggests that Barclays is a 'debt collector.'  Therefore, the FDCPA is not triggered by Plaintiff's

allegations").  Gardner's FDCPA claim must therefore be dismissed because she has not

adequately alleged that any of the defendants is a debt collector.

> **3.    Whether Gardner's Complaint Adequately Alleges That Defendants Engaged in Debt Collection**

Gardner's FDCPA claim must also be dismissed because it fails to satisfy the requirements

of Rule 8(b).  The cause of action is simply a verbatim list of the types of conduct precluded by

the FDCPA in §§ 1692d-g, preceded by the words "Defendant(s) violated."[80]  Merely reciting the

elements of a claim, unsupported by any factual basis, is insufficient to meet the standards of *Iqbal*

and *Twombly*.  See *Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do" (internal citations omitted)).  As noted,

---

[80]See Complaint, ¶ 19.  Specifically, Gardner alleges that defendants (1) engaged in conduct the natural consequence of which is to harass, oppress, or abuse any person; (2) falsely represented the character, amount, or legal status of any debt; (3) sold or transferred any interest in the debt that would cause the consumer to lose any claim or defense to payment of the debt; (4) communicated or threatened to communicate to any person credit information that is known or should be known to be false, including the failure to communicate that a disputed debt is disputed; (5) used false representation or deceptive means of collecting or attempting to collect their debt or to obtain information concerning a consumer; (6) failed to disclose in their initial written communication with Gardner that they were attempting to collect a debt and that any information obtained by Gardner would be used for that purpose, and failed to disclose in subsequent communications that the communication is from a debt collector; (7) used a name other than the true name of their business; (8) collected any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law; (9) took or threatened to unlawfully repossess or disable Gardner's property; and (10) failed, within five days after their initial communication with Gardner, to send her a written notice containing a statement that unless she, within thirty days after receipt of the notice, disputed the validity of the debt, or any portion thereof, the debt would be assumed to be valid by the debt collector.  (*Id*.)

the only factual allegations in the complaint concern Wells Fargo's consideration of Gardner's loan modification application and First American/BofA's foreclosure on the property. There are no allegations that any defendant harassed Gardner, falsely represented the amount of her debt, reported false credit information, used deceptive means to collect a debt,[81] failed to disclose that a debt collector was attempting to collect a debt, or used a different name than the true name of its business. Gardner's FDCPA claim, to the extent it is based on these allegations, is therefore entirely conclusory, and must be dismissed on this basis as well.[82]

To the extent Gardner's claim is based on Wells Fargo's conduct in evaluating her loan modification application, the claim must be dismissed because it does not concern a debt collection practice. It therefore cannot be a basis for liability under the FDCPA. See *Kennedy v. Wells Fargo Bank, N.A.*, No. CV 11–4635 DSF (PLAx), 2011 WL 4526085, *3 (C.D. Cal. Sept. 28, 2011) ("[T]he complaint fails to plead that Defendant was attempting to collect a debt within the meaning of the FDCPA [when it engaged in loan modification discussions with the debtor]. Contact by a lender or loan servicer for the purpose of restructuring payments on a debt is not 'collection of a debt' for the purposes of the FDCPA when the lender or servicer does not demand payment for past amounts owed"); *Ramos v. Wells Fargo*, No. 6:12–CV–00246–AA, 2012 WL 4863708, *5 (D. Or. Oct. 5, 2012) (dismissing an FDCPA claim based on defendant's alleged refusal to accept a loan modification paperwork because such conduct did not involve debt

---

[81]This allegation, which sounds in fraud, must satisfy the heightened pleading requirements of Rule 9(b). See *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (holding that "allegations [ ] of fraudulent conduct [in a claim] must satisfy the heightened pleading requirements of Rule 9(b)" although "fraud is not an essential element of [the] claim," and that "[a]llegations of non-fraudulent conduct [in such claims] need satisfy only the ordinary pleading standards of Rule 8(a)"); *Dickman v. Kimball, Tirey & St. John, LLP*, __ F.Supp.2d __, 2013 WL 6053797,*8 (S.D. Cal. Nov. 6, 2013) (evaluating an FDCPA claim under Rule 9(b) because it alleged fraud, specifically that defendant "made a false representation of the character, amount, or legal status of an alleged debt by claiming that $1,900.00 was owed for the month of September when it was not owed").

[82]Because the court dismisses the FDCPA claim under Rule 8(b), it declines to address defendants' argument that it should order a more definite statement under Rule 12(e). To the extent defendants' motion seeks such an order, it is denied as moot.

1   collection); see also *Bailey v. Security Nat. Servicing Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998)

2   (holding that plaintiffs' FDCPA claims failed because the letter they received did not "demand"

3   payment but "merely inform[ed] the Baileys about 'the current status' of their account. The due

4   dates listed in the letter [were] all prospective. Surely this is not the type of dunning letter that

5   describes a communication related to 'the collection' of a debt'").

6          Finally, as respects defendants' assertion that BofA's and First American's foreclosure on

7   the property is not a form of debt collection,[83] there is a split of authority among the circuits as

8   to whether the initiation of non-judicial foreclosure proceedings can ever be considered debt

9   collection for purposes of the FDCPA. Compare *Glazer v. Chase Home Finance LLC*, 704 F.3d

10   453, 464 (6th Cir. 2013) ("we hold that mortgage foreclosure is debt collection under the Act");

11   *Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006) (holding that "a party who satisfies

12   § 1692a(6)'s general definition of a 'debt collector' is a debt collector for the purposes of the

13   entire FDCPA even when enforcing security interests"); *Wilson v. Draper & Goldberg*, 443 F.3d

14   373, 374–76 (4th Cir. 2006) (rejecting an argument that plaintiff's mortgage ceased to be a "debt"

15   after foreclosure proceedings commenced, because, to hold otherwise would create "an enormous

16   loophole" in the FDCPA that would immunize any debt secured by an interest in real property

17   from the provisions of the FDCPA if foreclosure proceedings were used to collect the debt) with

18   *Nadalin v. Automobile Recovery Bureau, Inc.*, 169 F.3d 1084, 1085 (7th Cir. 1999) (stating that

19   the FDCPA defines "debt collectors" as excluding repossessors and other enforcers of security

20   interests, except that a repossessor may not take or threaten to take non-judicial action to

21   dispossess debtor of property if there is no present right to possess the property claimed as

22   collateral through an enforceable security interest).

23          The Ninth Circuit has not yet addressed this issue. In an August 2013 opinion, however,

24   the Ninth Circuit Bankruptcy Appellate Panel affirmed a bankruptcy court's dismissal of an

25   FDCPA claim against ReconTrust that was based on its foreclosure on real property under a deed

26   of trust. *In re Nordeen*, 495 B.R. 468, 488-89 (9th Cir. BAP 2013). The panel held that the

27   _____

28          [83]Motion at 15.

46

1  bankruptcy court had not erred in concluding that ReconTrust was not a debt collector because

2  foreclosing on real property under a deed of trust is not action to collect a debt. *Id.* The vast

3  majority of district courts in this circuit have reached the same conclusion. See, e.g., *Monreal*

4  *v. GMAC Mortg., LLC*, No. 13cv743 AJB (NLS), 2013 WL 2444165, *14 (S.D. Cal. June 4,

5  2013) (noting that most district courts in the Ninth Circuit have found that foreclosure proceedings

6  do not constitute "debt collection" for purposes of the FDCPA); *Zhang v. Countrywide Home*

7  *Loans, Inc.*, No. 11–cv–03475 (NC), 2012 WL 1245682, *11 (N.D. Cal. Apr. 13, 2012) (noting

8  that district courts throughout the Ninth Circuit have determined a foreclosure is not "debt

9  collection" under the FDCPA); see also *Natividad v. Wells Fargo Bank, N.A.*, No.

10  3:12–cv–03646 JSC, 2013 WL 2299601, *5 (N.D. Cal. May 24, 2013) (stating that "[a]lthough

11  the Ninth Circuit has yet to address whether foreclosure proceedings constitute 'debt collection'

12  within the ambit of the FDCPA, the majority of courts in this District, as well as many other

13  courts in this Circuit, have held that non judicial foreclosure proceedings are not debt collection,"

14  and collecting cases). The court, however, need not decide whether defendants' conduct in

15  foreclosing on Gardner's property subjects them to liability under the FDCPA because it has

16  already concluded that Gardner has not adequately alleged that defendants are debt collectors.

17                    **4.      Conclusion Regarding Gardner's FDCPA Claim**

18         For all of the reasons, Gardner's FDCPA is dismissed. Because the court believes it

19  possible that Gardner could amend the complaint to allege that defendants are debt collectors who

20  engaged in debt collection, the court dismisses the claim with leave to amend.[84] See *Eminence*

21  
    _____

22         [84]The court doubts that Gardner's FDCPA claim is timely, since the statute of limitations

23  for such a claim is one year from the date of the violation. See 15 U.S.C. § 1692k(d) ("[A]n

24  action to enforce any liability created by this subchapter may be brought . . . within one year from

    the date on which the violation occurred"). Nonetheless, the court declines to dismiss the claim

25  with prejudice because Gardner's claim is so vague that the court cannot ascertain whether it was

    filed within the applicable statute of limitations. Nor have defendants challenged the claim on this

26  ground. The statute of limitations, moreover, can be subject to equitable tolling. See *Mangum*

27  *v. Action Collection Service, Inc.*, 575 F.3d 935, 939-40 (9th Cir. 2009) (noting, in the context

    of an FDCPA claim, that "there is an operating presumption that 'equitable tolling [is] applicable

28  to suits against private defendants"); *Fairbank v. Underwood*, ___ F.Supp.2d ___, 2013 WL

1    *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice

2    and without leave to amend is not appropriate unless it is clear . . . that the complaint could not

3    be saved by amendment"); *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) ("'[A] district

4    court should grant leave to amend . . . unless it determines that the pleading could not possibly

5    be cured by the allegation of other facts,'" quoting *Cook, Perkiss & Liehe v. N. Cal. Collection

6    Serv.*, 911 F.2d 242, 247 (9th Cir. 1990)); *Klamath-Lake Pharmaceutical Ass'n v. Klamath Med

7    Sery Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) ("[F]utile amendments should not be

8    permitted"); *Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 623 (9th Cir. 1988)

9    (holding that where a court concludes that a *pro se* pleading should be dismissed, it "must . . .

10   give[ the litigant] leave to amend . . . unless it is 'absolutely clear that the deficiencies of the

11   complaint could not be cured by amendment,'" quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th

12   Cir. 1987)).

13          **F.    Whether Gardner's TILA Claim Should be Dismissed**

14          Although Gardner's complaint does not include a separately captioned cause of action

15   alleging a TILA claim, it repeatedly requests damages under TILA.[85]  Because Gardner is *pro se*,

16   the court construes the complaint liberally as stating a claim under TILA.

17          Congress enacted TILA to "avoid the uninformed use of credit."  *Mourning v. Family

18   Publications Services Inc.*, 411 U.S. 356, 377 (1973) (quoting 15 U.S.C. § 1601).  The statute

19   requires that loan information be presented in a specific format "in order to aid the borrower or

20   lessee in understanding the transaction by utilizing readily understandable language to simplify the

21   technical nature of the disclosures."  15 U.S.C. § 1604(b).  To ensure that this statutory purpose

22   is achieved, the Ninth Circuit construes the statute liberally.  See *Eby v. Reb Realty, Inc.*, 495

23   F.2d 646, 650 (9th Cir. 1974).  Thus, even minor or technical violations of TILA's disclosure

24   _____

25   6420987, *9 (D. Or. Dec. 8, 2013) ("Equitable tolling is applicable to the FDCPA, but it is
     extended 'only sparingly' by courts"); *Wilson v. Gordon & Wong Law Group, P.C.*, No.
26   2:13–CV–00609–MCE, 2013 WL 3242226, *4 (E.D. Cal. June 20, 2013) ("The Ninth Circuit
27   has held that equitable tolling is applicable to the FDCPA").

28          [85]See Complaint, ¶¶ 27, 36.

                                                    48

requirements will subject a lender to liability.  See *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 704 (9th Cir. 1986) (holding that plaintiff was entitled to rescind because although a lender stated that the right to rescind would expire three days from the consummation of the transaction, it failed to specify an exact expiration date).  "'To insure that the consumer is protected . . . [TILA and its accompanying regulations must] be absolutely complied with and strictly enforced.'"  *Id*. (quoting *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir. 1983)).  Section 1635(a) of the statute states that a creditor must "clearly and conspicuously disclose" the rights of the borrower, and provide "appropriate forms for the [borrower] to exercise his right to rescind any transaction subject to this section."  15 U.S.C. § 1635(a).[86]

Gardner alleges that defendants "fail[ed] . . . properly [to] accelerate their own loan," which she claims "is an essential pre-requisite to foreclosure," and subjects defendants to a penalty under 15 U.S.C. § 1640(a)(2)(A) "equal to twice the amount of the finance charge imposed."[87] "Pursuant to § 1640(a)(2), a creditor who fails to comply with 'any requirement imposed' under the TILA . . . is liable for an award of statutory damages."[88]  *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 888 (9th Cir. 2011).  The complaint contains no factual allegations regarding the purported manner in which defendants failed properly to accelerate the loan; nor does it specify which defendant failed to do so.  Accordingly, the claim must be dismissed for failure to satisfy

---

[86]In addition, "Regulation Z, codified at 12 C.F.R. § 226.1 *et seq.*, implements TILA. Both Regulation Z and its Official Staff Commentary are binding on lenders."  *Velazquez v. GMAC Mortgage Corp.*, 605 F.Supp.2d 1049, 1058 (C.D. Cal. 2008).  See also 12 C.F.R. §§ 226.17, 226.18, and 226.19.  Section 226.17 provides general requirements for disclosures, and mandates that the disclosures be made "clearly and conspicuously in writing, in a form that the customer may keep."  12 C.F.R. § 226.17(a)(1).

[87]Complaint, ¶ 36.

[88]Section 1640(a)(2) provides that "[e]xcept as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person in an amount equal to the sum of– (1) any actual damage sustained by such person as a result of the failure; [and] (2)(A)(I) in the case of an individual action twice the amount of any finance charge in connection with the transaction."  15 U.S.C. § 1640(a)(2).

Rule 8(a).  *Moss*, 572 F.3d at  969 ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*); see also *Marks v. Chicoine*, No. C 06-06806 S, 2007 WL 160992, *7 (N.D. Cal. Jan. 18, 2007) ("Plaintiff's [fourth] cause of action, entitled "violation of the truth in lending act," lists a variety of statutes and regulations which were allegedly violated, including . . . the Truth in Lending Act (TILA). . . . The [complaint] does not allege how defendants violated the various statutes and regulations mentioned, and thus does not  give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  The Court therefore DISMISSES plaintiff's fourth cause of action" (internal quotation marks and citations omitted)); *Justice v. Countrywide Home Loans, Inc.*, No. 05-008, 2006 WL 141746, *2 (E.D. Tenn. Jan. 18, 2006) (dismissing a TILA claim based on the "mere recitation of statutory language, absent supporting allegations").

More fundamentally, the court is not aware of any provision in TILA that requires creditors to accelerate a loan properly under the terms of the loan agreement.  Such a claim would seem to be more properly asserted as a breach of contract claim.  The only mention of acceleration associated with TILA is found in a regulation, 12 C.F.R. § 226.18(p), which provides that creditors "shall disclose . . . where applicable. . . that the consumer should refer to the appropriate contract document for information about nonpayment, default, the right to accelerate the maturity of the obligation, and prepayment rebates and penalties." See also *Ford Motor Credit Company v. Milhollin*, 444 U.S. 555, 561-70 (1980) (holding that TILA did not require  a creditor to disclose an acceleration provision unless the creditor's policy for refunding unearned finance charges in the case of acceleration differ[ed] from the stated refund policy with respect to voluntary prepayment because acceleration is not a "default, delinquency, or similar charge"). Nothing in § 226.18(p) states that creditors must comply with the terms of the loan.  As noted, TILA mainly regulates the procedural aspect of a creditor's disclosures to debtors, not the creditor's substantive compliance with the terms of applicable loan agreements.  Accordingly, Gardner's TILA claim is dismissed with leave to amend her complaint to state a valid TILA claim

that complies with the applicable pleading standard.[89]

G.   **Whether the Court Should Exercise Supplemental Jurisdiction over Gardner's State Law Claims**

Gardner's federal law claims provide the sole basis for federal subject matter jurisdiction in this case.[90]   Because it is presently unclear whether Gardner can state a viable claim under federal law, the court declines to exercise jurisdiction over her state law claims at this time. See

---

[89]The court doubts whether any claim Gardner could assert under TILA would be timely. Like the FDCPA, a TILA damages claim must be filed "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *Beall v. Quality Loan Service Corp.*, No. 10–CV–1900–IEG (WVG), 2011 WL 1044148, *6 (S.D. Cal. Mar. 21, 2011) ("Because the FDIC purportedly assigned Plaintiff's Deed of Trust to One West on January 21, 2010, Plaintiff's cause of action would have accrued thirty days thereafter, when One West allegedly failed to send the required notification of assignment. . . . Plaintiff's claim [under § 1641(g)] is timely because plaintiff brought this claim 'within one year from the date of the occurrence of the violation"). Gardner's house was sold at foreclosure on March 2, 2011. She filed this action on October 3, 2013, more than two years after the sale of her property. Any claim would therefore appear to be barred by the statute of limitations. Because defendants did not seek dismissal of the claim on this basis, because courts have held that the statute of limitations on TILA claims can be equitably tolled, and because the court cannot determine the date of the TILA violation Gardner is alleging because her allegations are too vague, it declines to dismiss her claim with prejudice based on the statute of limitations at this juncture. See *King v. State of California*, 784 F.2d 910, 915 (9th Cir. 1986) ("[T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction [ ] but the doctrine of equitable tolling may, in the appropriate circumstances suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action").

[90]Plaintiffs sought to invoke only this court's federal question jurisdiction. Because "the Court must scrutinize the entire complaint before deciding on the existence of jurisdiction," the court also considers whether it has diversity jurisdiction under 28 U.S.C. § 1332(a). *Hardy v. National Kinney of California, Inc.*, 565 F.Supp. 1027, 1029 (N.D. Cal. 1983) (citing 5 C. Wright and A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1206 (1969)). It is unclear from the complaint whether the court has diversity jurisdiction, as the complaint does not allege the citizenship of any of the parties nor the amount in controversy. (Complaint, ¶¶ 4-10, 27 33, 36.) Assuming Gardner is a California citizen, however, it appears that diversity jurisdiction is lacking because First American Trustee Servicing Solutions LLC is a limited liability company wholly owned by First American Title Company, which is a California corporation. See *Rockridge Trust v. Wells Fargo, N.A.*, No. C–13–01457 JCS, 2013 WL 3200631, *17 (N.D. Cal. June 24, 2013) (determining that First American is a California citizen because of it was wholly owned by First American Title Company).

*Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996) ("Where a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice"); *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991) ("[I]t is generally preferable for a district court to remand remaining pendent claims to state court"); *Anderson v. Countrywide Financial*, No. 2:08-cv-01220-GEB-GGH, 2009 WL 3368444, *6 (E.D. Cal. Oct. 16, 2009) ("Since state courts have the primary responsibility to develop and apply state law, and the *Gibbs* values do not favor continued exercise of supplemental jurisdiction over Plaintiff's state claims, Plaintiffs state claims are dismissed under 28 U.S.C. § 1367(c)(3)"); 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [state-law] claim [if] . . . the district court has dismissed all claims over which it has original jurisdiction"). See also *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law"). Cf. *Graves v. Downey Sav. and Loan Ass'n.*, No. 09-02666 JF (RS), 2009 WL 3335335, *5 (N.D. Cal. Oct. 14, 2009) (dismissing TILA and RESPA claims without prejudice, and holding that the proper course was to "defer . . . review of Plaintiffs' remaining state-law claims"). Accordingly, the court dismisses Gardner's state law claims without prejudice. She may replead the claims if she elects to amend either of her federal claims.

### III.  CONCLUSION

For the reasons stated, the court dismisses Brown's claims for lack of standing. If Brown wishes to remain a plaintiff in this case, he must respond to the court's order to show cause why his claims should not be dismissed for lack of Article III standing by **February 13, 2014**, and he must allege in any amended complaint facts showing that the trustee of his bankruptcy estate affirmatively abandoned his claims against defendants.

The court denies defendants' request for a stay of the case under the *Colorado River* doctrine without prejudice to renewal if they can satisfy the deficiencies in their showing outlined in this order.   The court's decision not to stay under *Colorado River* is also without prejudice to defendants' right to move for a stay under *Landis* if they can show they will suffer prejudice if the case is not stayed and that the balance of the relevant factors favors a stay.   The court dismisses Gardner's FDCPA and TILA claims without prejudice, except to the extent her FDCPA claim is based on an allegation that defendants did not possess Gardner's original promissory note; this aspect of her FDCPA claim is dismissed with prejudice.   The court declines to exercise supplemental jurisdiction over Gardner's remaining state law claims.   Because the court has dismissed Gardner's complaint, it denies defendants' motion to strike and request for a more definite statement as moot.

Plaintiffs may amend their complaint within twenty (20) days of the date of this order if Brown can show he has standing to pursue his claims and if Gardner can cure the deficiencies noted with respect to her FDCPA and TILA claims.   If plaintiffs amend the FDCPA and TILA claims, they may replead their state law claims.   Plaintiffs are cautioned that unless they first obtain leave of court, they may not plead additional claims or allege new facts not designed to cure the defects noted in this order.   Should the scope of any amendment exceed the scope of leave to amend granted by this order, the court will strike the offending portions of the pleading under Rule 12(f).   See FED.R.CIV.PROC. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.   The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading"); see also *Barker v. Avila*, No. 2:09-cv-00001-GEB-JFM, 2010 WL 3171067, *1-2 (E.D. Cal. Aug. 11, 2010) (striking an amendment to a federal law claim where the court had granted leave to amend only state law claims).

DATED: February 3, 2014

MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

53